December 10, 2014

**VIA EMAIL**

Robert A. Stein
The Stein Law Firm
One Barberry Lane
PO Box 2159
Concord, New Hampshire 03302

  Re: Claimant/Insured:  Brendan Kelly
     Named Insured:  Plum Creek Timber Company
     Policy Number: TH7-661-066340-013

Dear Bob:

  I am writing as a follow-up to our discussions regarding Brendan Kelly's underinsured motorist claim, as well as to respond to your letters of October 27, 2014 and November 3, 2014. This letter will also supplement my prior letter of August 5, 2014 to Plum Creek Timber Company ("Plum Creek") regarding Mr. Kelly's underinsured motorist claim.  As discussed more fully below, the umbrella policy issued by Liberty Insurance Corporation ("Liberty") to Plum Creek does not provide underinsured motorist coverage to Mr. Kelly.

**I.**  **The Policy**

  Liberty issued a Commercial Umbrella Policy to Plum Creek, policy number TH7-661-066340-013, with an effective date of June 1, 2013 to June 1, 2014 and an each occurrence limit, general aggregate limit and products-completed operations aggregate limit in the amount of $5 million (the "Policy").  Plum Creek's primary place of business is in Seattle, Washington and its broker, AON, is also located in Seattle, Washington.

  The Policy provides, among other things, excess coverage over a Business Auto Policy issued to Plum Creek by ACE American Insurance Company for certain third party liability claims (the "Primary ACE Policy").  The Policy does not provide excess coverage for first party claims, such as medical payments, uninsured or underinsured motorist ("UM"), personal injury

protection, or physical damage or collision, which are covered under the Primary ACE Policy. More specifically, the Policy's Insuring Agreement provides that:

> a   We will pay those sums in excess of the "retained limit" that the insured becomes legally obligated to pay as damages because of:
>
> (1)   "Bodily injury";
> (2)   "Property damage"; or
> (3)   "Personal and advertising injury";
>
> to which this insurance applies.  The amount we will pay for damages is limited as described in SECTION III – LIMITS OF INSURANCE.
>
> b.   We will have the right and duty to defend any "suit" seeking damages covered by this insurance, by counsel of our choice ….
>
> c.   This insurance applies only if:
>
> (1)   The "bodily injury" or "property damage" occurs during the policy period ….
> (2)   The "bodily injury" … is caused by an "occurrence" that takes place anywhere in the world …

Thus, the Policy provides coverage for an insured's liability for bodily injury claims brought by third parties alleging that they were injured or harmed by an insured.  The Policy contains an auto exclusion which provides that "this insurance does not apply to: ….

> f.   Auto Coverages
>
> (1)   "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others … of any "auto" … This exclusion does not apply, however, if the "bodily injury" or "property damage" is covered by "underlying insurance" ….
>
> (2)   Any loss, cost or expense payable under or resulting from a **first party** physical damage coverage, no-fault law, personal injury protection or auto medical payments coverage, or **uninsured or underinsured motorist law**, except to the extent coverage is specifically provided by endorsement to this policy.

(the "Auto Exclusion") (emphasis added).  The Policy does not contain an endorsement providing coverage for UM claims and, as such, the Auto Exclusion expressly bars coverage for such claims.

## II. The New Hampshire UM Statute

New Hampshire's Uninsured or Hit-and-Run Motor Vehicle Coverage statute (N.H. Rev. Stat. § 264:15) provides that:

> No policy shall be issued under the provisions of RSA 264:14, with respect to a vehicle registered or principally garaged in this state, unless coverage is provided therein or supplemental thereto at least in amounts or limits prescribed for bodily injury or death for a liability policy under this chapter, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or drivers of uninsured motor vehicles, and hit-and-run vehicles because of bodily injury, sickness, or disease, including death resulting therefrom. When an insured elects to purchase liability insurance in an amount greater than the minimum coverage required by RSA 259:61, the insured's uninsured motorist coverage shall automatically be equal to the liability coverage elected. **For the purposes of this paragraph umbrella or excess policies that provide excess limits to policies described in RSA 259:61 shall also provide uninsured motorist coverage equal to the limits of liability purchased, unless the named insured rejects such coverage in writing**. Rejection of such coverage by a named insured shall constitute a rejection of coverage by all insureds, shall apply to all vehicles then or thereafter eligible to be covered under the policy, and shall remain effective upon policy amendment or renewal, unless the named insured requests such coverage in writing.

(the "NH UM Statute") (emphasis added). Plum Creek, the named insured, rejected UM coverage on May 30, 2013. *See* New Hampshire Excess Uninsured Motorists Coverage Selection or Rejection Form. (the "NH UM Rejection Form"). The NH UM Rejection Form provides, in part, as follows:

> N.H. REV. STAT. ANN. § 264:15 requires umbrella policies that provide excess limits to a motor vehicle liability policy to also provide uninsured motorists coverage, unless you reject such coverage in writing.
>
> You must maintain New Hampshire Uninsured Motorists Coverage on your underlying commercial auto liability policy for this Excess Uninsured Motorists Coverage to apply.
>
> You may accept or reject Uninsured Motorists Coverage in this umbrella policy by initialing and signing below. Rejection of such coverage by you shall constitute a rejection of coverage by all insureds, shall apply to all vehicles then or thereafter eligible to be covered under the policy, and shall remain effective upon policy amendment or renewal, unless you request a change in coverage in writing to the Company.

The NH UM Rejection Form is virtually identical to the form issued by the Insurance Service Offices (ISO) for New Hampshire garaged vehicles.  In fact, the NH UM Rejection Form states that it includes copyrighted material of ISO with its permission.

On May 30, 2014, Lisa Duetsch, Manager Risk & Insurance, for Plum Creek, rejected UM coverage.  Consistent with its approach in New Hampshire, Plum Creek also expressly rejected excess UM coverage for vehicles garaged in Florida, Louisiana and West Virginia.

**III.   The UM Claim**

As a threshold matter, Mr. Kelly's claim does not fall within the Policy's insuring agreement.  While Mr. Kelly alleges bodily injury, he has not asserted a claim *against* an insured for which that insured would be legally obligated to pay damages.  Moreover, even if Mr. Kelly's claim fell within the Policy's insuring agreement, which Liberty denies, the Auto Exclusion expressly bars coverage for UM claims.  Accordingly, the Policy does not provide coverage for Mr. Kelly's UM claim.

In your letter of November 3, 2014, you disagree with Liberty's coverage determination for two reasons.  First, you contend that the Auto Exclusion is ambiguous because Paragraphs (1) and (2) of the Auto Exclusion are allegedly contradictory.  As you acknowledge, courts will read a policy provision in the context of the entire policy and not in isolation.  The Policy is an umbrella liability policy providing coverage to an insured (as defined by the Policy) against third party claims.  Paragraph (1) of the Auto Exclusion bars coverage for an insured's *liability* for bodily injury arising out of the ownership, maintenance, use or entrustment of an auto, unless such claims are covered by underlying insurance.  State differently, Paragraph (1) is applicable to tort claims asserted against an insured arising out of certain auto liability exposures.  In contrast, Paragraph (2) is applicable to *first party* claims, where an insured is seeking coverage for his *own* loss.  Thus, Paragraph (2) – which expressly references first party coverage – is not applicable in the third party context.  Accordingly, the two paragraphs are not contradictory.  To the contrary, the two paragraphs apply to two separate and distinct types of claims.

Next, you argue that, under the NH UM Statute, a Policy cannot contain a general exclusion of UM coverage.  As an initial matter, assuming that the NH UM Statute is applicable to the Policy, the NH UM Statute does not contain any such prohibition.  In the umbrella context, the NH UM Statute provides that a policy's UM limits shall be equal to the policy's liability limits unless the named insured rejects UM coverage in writing.  Here, Plum Creek rejected UM coverage.  As such, the Policy excludes coverage for UM claim.  In the event Plum Creek had elected to purchase UM coverage, then an endorsement would have been added to the Policy to amend the Auto Exclusion to affirmatively provide such coverage.

Finally, Liberty disagrees with your suggestion that the Policy fails to comply with or undermines the applicable law.  The NH UM Statute does not require an insured, such as Plum Creek, to purchase excess UM coverage.  Under the statute, Plum Creek had the right – which it exercised – to reject excess UM coverage.  Moreover, the NH UM Statute does not require an insurer to attach the named insured's written rejection of UM coverage to a policy.  Nor does the NH UM Statute require an insurer to reference the acceptance or rejection of statutory UM coverage in the policy.  While you suggest in your October 27, 2014 letter that Liberty should

have attached an endorsement addressing UM coverage, there was no reason – statutory or otherwise – for Liberty to do so.   The Auto Exclusion expressly bars coverage for UM claims.

      The foregoing comments are not intended nor should they be deemed to be exhaustive or exclusive.  Liberty continues to reserve all of its rights, remedies, and defenses under the Policy and applicable law.  Liberty also reserves its right to assert that New Hampshire law does not apply to the interpretation of the Policy in connection with Mr. Kelly's claim.  Neither this letter nor any other act on behalf of Liberty shall constitute a waiver of any of Liberty's rights, remedies or defenses.

      Naturally, if you would like to discuss Liberty's coverage position or, if you have any additional information or legal authority that you would like for Liberty to consider, please send that to me.

Best regards,

*Joseph P. Covert*

Joseph P. Covert