EXHIBIT 3                           1

## POLICY CERTIFICATION FORM

RE:    NAMED INSURED: PLUM CREEK TIMBER COMPANY, INC.

      POLICY NUMBER:   TH7-661-066340-013

      EFFECTIVE DATES:   06/01/2013 TO 06/01/2014

☒ I certify this is to be a true copy of the original policy issued.

☐ I certify this is to be a true copy of the original Declarations page issued.

☐ I certify this is to be a true copy of the original Uninsured/Underinsured
Motor Rejection and/or the Personal Injury Rejection form(s).

☐ This policy was retrieved from Liberty Mutual's files and is Liberty Mutual's best
current evidence of the policy.  Liberty Mutual, however, reserves the right to
supplement or amend this policy should further or different terms, conditions,
endorsements, or exclusions become known. Liberty Mutual does not acknowledge
that this is a certified copy of the policy, or that it is the exact copy of the policy
that was delivered to the insured.

LIBERTY MUTUAL RESERVES THE RIGHT TO FURTHER AMEND OR SUPPLEMENT THIS
POLICY SHOULD ANY ADDITIONAL TERMS, CONDITIONS OR EXCLUSIONS COME TO
OUR ATTENTION.

Agnieszka Swiontkowska, USM
Central Processing Operations
Commercial Insurance Shared Services
Lewiston, Maine

Date:   _02/10/2015_

EXHIBIT 3

## COMMERCIAL LIABILITY – UMBRELLA DECLARATIONS



Policy Number: TH7-661-066340-013

Renewal of: TH7-661-066340-012

Producer:

AON RISK INSURANCE SERVICES WEST INC
1420 FIFTH AVE STE 1200
SEATTLE, WA 98101

Item 1. Named Insured and Mailing Address:

PLUM CREEK TIMBER COMPANY, INC.
999 3RD AVE, SUITE 4300
SEATTLE, WA 98104

The Named Insured Is:  Corporation

Business of the Named Insured is:  Wood products, nec

Item 2. Policy Period: 6/1/2013 to 6/1/2014 at 12:01 A.M. standard time at above mailing address.

Item 3. In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

LIMITS OF INSURANCE

Each Occurrence Limit                                      $ 5,000,000
General Aggregate Limit                                   $ 5,000,000
Products-Completed Operations Aggregate Limit            $ 5,000,000

Item 4. Self-Insured Retention - Each Occurrence:        $ 10,000

Item 5. Premium:

| Premium Basis | Audit Basis | Estimated Exposure | Rate | Advance Premium |
|---|---|---|---|---|
| Flat Charge | 0 | | | $ 168,813 |

Terrorism Risk Insurance Act:        $ 0
Total Advance Premium:               $ 168,813

Minimum Premium:                     $ 42,203

Issued by:
Liberty Insurance Corporation
175 Berkeley St.
Boston, MA 02117
617-357-9500

| Issued | Code Number | Account Number | Sub-Account Number |
|---|---|---|---|
| JD 06/26/2013 | 99935 | 6-066340 | 0000 |

Item 6. Underlying Insurance

| Coverage | Insurer<br>Policy Period<br>Policy Number | Limits of Insurance |
|---|---|---|
| Employers Liability - MT,<br>WA only | ACE American Insurance<br>Company<br>6/1/2013 to 6/1/2014<br>WLR C47329930 | $2,000,000 By Accident Each Accident<br>$2,000,000 By Disease Policy Limit<br>$2,000,000 By Disease Each Employee |
| Employers Liability - All<br>Other States | ACE American Insurance<br>Company<br>6/1/2013 to 6/1/2014<br>SCF C47329942 | $2,000,000 By Accident Each Accident<br>$2,000,000 By Disease Policy Limit<br>$2,000,000 By Disease Each Employee |
| Auto Liability | ACE American Insurance<br>Company<br>6/1/2013 to 6/1/2014<br>ISA H08684935 | $1,000,000 CSL |
| General Liability | ACE American Insurance<br>Company<br>6/1/2013 to 6/1/2014<br>XSL G25840070 | $1,000,000 Each Occurrence<br>$5,000,000 General Aggregate<br>$2,000,000 Products/Completed Ops<br>Aggregate<br>$1,000,000 Pers & Adv injury Limit |
| Non-Owned Aircraft<br>Liability | Federal Insurance Company<br>6/1/2013 to 6/1/2014<br>9958-9529-03 | $10,000,000 Each Occurrence |
| Foreign Auto Liability | ACE AmericanInsurance<br>Company<br>6/1/2013 to 6/1/2014<br>PHFD38377577 001 | $1,000,000 CSL |
| Foreign Employers<br>Liability | ACE American Insurance<br>Company<br>6/1/2013 to 6/1/2014<br>PHFD38377577 001 | 1M/1M/1M Each Accident/Policy Limit/Each<br>Employee |
| Foreign General Liability | ACE American Insurance<br>Company<br>6/1/2013 to 6/1/2014<br>PHFD38377577 001 | $1,000,000 Each Occurrence<br>Not Covered General Aggregate<br>$2,000,000 Products/Completed Ops<br>Aggregate<br>$1,000,000 Pers & Adv Injury Limit |
| Bumbershoot Liability -<br>Excess | Atlantic Specialty Insurance<br>Company<br>6/1/2013 to 6/1/2014<br>B5JH52594 | $3,000,000 Each Claim<br>$3,000,000 Aggregate |
| Employers Liability | ACE American Insurance<br>Company<br>6/1/2013 to 6/1/2014<br>WCU C47329954 | $2,000,000 By Accident Each Accident<br>$2,000,000 By Disease Policy Limit<br>$2,000,000 By Disease Each Employee |

These Declarations and any Declarations Extension Schedules, together with the Coverage Form and any Endorsement(s) complete this policy.

Forms and Endorsements attached to this policy: See Attached Schedule

Countersigned by:

*Patricia Fassler*

Authorized Company Representative

EXHIBIT 3

## SCHEDULE OF FORMS AND ENDORSEMENTS

| Form Number | Form Name | Endorsement Number |
|---|---|---|
| LCU 00 02 11 10 | Commercial Liability - Umbrella Declarations | |
| LCU 99 05 11 10 | Declarations Extension - Named Insured | 1 |
| LCU 21 19 11 10 | Silica or Silica - Related Dust Exclusion | 2 |
| LCU 21 47 11 10 | Damage First Occurring Prior to Policy Period Exclusion | 3 |
| LCU 24 09 11 10 | Foreign Liability Limitation | 4 |
| LCU 25 09 11 10 | Non-Cumulation of Liability (Same Occurrence) | 5 |
| LCU 02 18 11 10 | Washington Changes - Cancellation and Non-Renewal | 6 |
| LCU 32 22 11 10 | Washington Changes - Fungi or Bacteria Exclusion | 7 |
| LCU 32 35 11 10 | Washington Changes - Named Insureds Condition | 8 |
| LCU 04 04 11 10 | Employee Benefits Liability Coverage Limitation | 9 |
| LC 24 07 08 07 | Waiver Of Subrogation | 10 |
| LCU 26 12 11 10 | Total Pollution Exclusion With a Hostile Fire Exception | 11 |
| LCU 21 70 11 10 | Professional Liability Exclusion Including But Not Limited to Specified Operations | 12 |
| LC 21 06 06 07 | Lead Exclusion | 13 |
| LMU 04 09 12 11 | Loggers Property Damage Liability Coverage | 14 |
| LMU 26 01 12 10 | Combined Named Peril and Time Element Pollution Liability Coverage | 15 |
| LCU 21 35 11 10 | Designated Operations Exclusion | 16 |
| LCU 04 11 01 12 | Crisis Management Coverage | 17 |
| CU 21 56 06 06 | Auto Exclusion of Terrorism Coverage | 18 |
| CU 21 62 12 06 | Oklahoma Auto Exclusion of Terrorism Coverage (Underlying Auto Coverage Excludes Terrorism Above Minimum Statutory Limits) | 19 |
| CU 21 63 12 06 | Washington Auto Exclusion of Terrorism Coverage | 20 |
| CU 01 62 01 08 | Alaska Certified Acts of Terrorism Exclusion | 21 |

(

EXHIBIT 3

CU 21 33 01 08        Exclusion of Certified Acts of Terrorism                                     22

LCU 00 01 11 10       Commercial Liability -- Umbrella Coverage Form

SNI 90 02 11 10       Policy Holder Disclosure - TRIA

LIL 90 05 06 13       Participating Provision

Policy Number: TH7-661-066340-013
Issued by: LIBERTY INSURANCE CORPORATION

Endorsement #: 1
End. Eff. Date:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**DECLARATIONS EXTENSION – NAMED INSURED**

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY – UMBRELLA COVERAGE FORM

Extension of Item 1. Named Insured of the Declarations:

First Named Insured:     Plum Creek Timber Company, Inc.

Additional Named Insureds:
Plum Creek Manufacturing, L.P.
Plum Creek Marketing, Inc.
Plum Creek Foreign Sales Corporation
Plum Creek Remanufacturing, Inc.
PC Advisory Corp. I
PC Advisory Partners I, L.P.
PCMC Holdings, L. P.
PCMC Intermediate Holdings, L.P.
Plum Creek Management Company, L.P.
or any subsidiary, affiliates, partnerships, interest in joint ventures, allied companies, limited liability corporations, trusts, foundations, trustees, and related entities of the above Named insureds, which now exist or may hereafter be constituted or acquired as additional Named insureds under this policy. This shall include any antecedent companies for with Plum Creek Timber Company, Inc. may be liable.

       © 2010 Liberty Mutual Group of Companies. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission.       Page 1 of 1

Policy Number: TH7-661-066340-013                    Endorsement #: 2
Issued by:  LIBERTY INSURANCE CORPORATION            End. Eff. Date:

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY – UMBRELLA COVERAGE FORM

A.  The following exclusion is added to Paragraph 2. Exclusions of SECTION I – COVERAGES:

2.  Exclusions

This insurance does not apply to:

Silica or Silica-Related Dust

(1) "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

(2) "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

(3) "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

(4) Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

B.  The following definitions are added to SECTION V – DEFINITIONS:

a.  "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

b.  "Silica-related dust" means a mixture or combination of silica and other dust or particles.

LCU 21 19 11 10      © 2010 Liberty Mutual Group of Companies. All rights      Page 1 of 1
reserved. Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

ſ

EXHIBIT 3

8

Policy Number: TH7-661-066340-013
Issued by:  LIBERTY INSURANCE CORPORATION

Endorsement #:3
End. Eff. Date:

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### DAMAGE FIRST OCCURRING
### PRIOR TO POLICY PERIOD EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY – UMBRELLA COVERAGE FORM

The following exclusion is added to Paragraph 2. Exclusions of SECTION I – COVERAGES:

2.  Exclusions

This insurance does not apply to:

Damage First Occurring Prior to Policy Period

This insurance does not apply to "bodily injury" or "property damage" within the "products-completed operations hazard" if the injury or damage first occurred prior to the effective date of this policy.

 © 2010 Liberty Mutual Group of Companies. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ŧ

EXHIBIT 3

9

Policy Number: TH7-661-066340-013                           Endorsement #: 4
Issued by:  LIBERTY INSURANCE CORPORATION       End. Eff. Date:

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### FOREIGN LIABILITY LIMITATION

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY – UMBRELLA COVERAGE FORM

A.  Paragraph 1.c.(2) of SECTION I – COVERAGES is deleted.

B.  The following exclusion is added to Paragraph 2. Exclusions of SECTION I – COVERAGES:

2.  Exclusions

This insurance does not apply to:

Foreign Liability

"Bodily injury", "property damage" or "personal and advertising injury" caused by an
"occurrence" that takes place outside of the United States of America (including its
territories and possessions), Puerto Rico and Canada.

This exclusion does not apply if the "bodily injury", "property damage" or "personal and
advertising injury" is covered by "underlying insurance". Coverage provided will follow
the terms, definitions, conditions and exclusions of "underlying insurance", subject to the
policy period, limits of insurance, premium and all other terms, definitions, conditions and
exclusions of this policy, except that the coverage provided will be no broader than the
coverage provided by "underlying insurance".

However, if coverage for a claim or "suit" under this policy would violate any economic or
trade sanctions of the United States of America, including, but not limited to, sanctions
administered and enforced by the United States Treasury Department's Office of Foreign
Assets Control ("OFAC"), then coverage for that claim or "suit" will be null and void.

LCU 24 09 11 10      © 2010 Liberty Mutual Group of Companies. All rights          Page 1 of 1
                      reserved. Includes copyrighted material of Insurance
                            Services Office, Inc., with its permission.

I

EXHIBIT 3

10

Policy Number: TH7-661-066340-013
Issued by: LIBERTY INSURANCE CORPORATION

Endorsement #: 5
End. Eff. Date:

THE ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### NON-CUMULATION OF LIABILITY
### (SAME OCCURRENCE)

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY – UMBRELLA COVERAGE FORM

A. The following is added to Paragraph 4. of SECTION III – LIMITS OF INSURANCE:

If one "occurrence" causes "bodily injury" and/or "property damage" during the policy period
and during the policy period of one or more prior and/or future umbrella or excess liability
policy(ies) issued to you by us, then this policy's Each Occurrence Limit will be reduced by the
amount of each payment made by us under the other policy(ies) because of such
"occurrence". This paragraph will not apply to insurance specifically written as excess over
this policy.

If one "occurrence" causes "personal and advertising injury" to which this policy applies and to
which one or more prior and/or future umbrella or excess liability policy(ies) issued to you by
us also applies, then this policy's Each Occurrence Limit will be reduced by the amount of
each payment made by us under the other policy(ies) because of such "occurrence". This
paragraph will not apply to insurance specifically written as excess over this policy.

B. Paragraph 5. of SECTION III – LIMITS OF INSURANCE is replaced by the following:

The aggregate Limits of Insurance of this policy apply separately to each consecutive annual
period and to any remaining period of less than 12 months, starting with the beginning of the
policy period shown in the Declarations, unless the policy period is extended after issuance
for an additional period of less than 12 months. In that case, the additional period will be
deemed part of the last preceding period for purposes of determining the aggregate Limits of
Insurance. However, the Each Occurrence Limit is the most we will pay for damages
because of all "bodily injury", "property damage" and "personal and advertising injury" arising
out of any one "occurrence" regardless of the length of the policy period.

LCU 25 09 11 10     © 2010 Liberty Mutual Group of Companies. All
rights reserved. Includes copyrighted material of
Insurance Services Office, Inc., with its permission.

Page 1 of 1

Policy Number:  TH7-661-056340-013                          Endorsement #: 6
Issued by:  LIBERTY INSURANCE CORPORATION                   End. Eff. Date:

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

WASHINGTON CHANGES – CANCELLATION AND NON-RENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY – UMBRELLA COVERAGE FORM

A.  Paragraph 10. of SECTION IV – CONDITIONS is deleted and replaced by the following:

10. Cancellation and Non-Renewal

a.  The First Named Insured shown in the Declarations may cancel this policy by
notifying us or the insurance producer in one of the following ways:

(1)  Written notice by mail, fax, or e-mail; or

(2)  Surrender of the policy or binder.

Upon receipt of such notice, we will cancel this policy or any binder issued as
evidence of coverage, effective on the later of the following:

(1)  The date on which the notice is received or the policy or binder is surrendered; or

(2)  The date of the cancellation requested by the First Named Insured

b.  We may cancel this policy by mailing or delivering to you and your agent or broker
written notice of cancellation, including the actual reason for cancellation, to the last
mailing address known to us, at least:

(1)  10 days before the effective date of cancellation if we cancel for nonpayment of
premium; or

(2)  45 days before the effective date of cancellation if we cancel for any other
reason;

c.  Notice of cancellation will state the effective date of cancellation.  The policy period
will end on that date at 12:01 AM.

d.  If this policy is canceled, we will send the First Named Insured any premium refund
due.  If we cancel, the refund will be pro rata.  If the First Named Insured cancels, the
refund will be at least 90% of the unearned premium.

The cancellation will be effective even if we have not made or offered a refund.  Our
check, mailed or delivered, shall be sufficient tender of any refund due you.

e.  If notice is mailed, proof of mailing will be sufficient proof of notice.

LCU 02 18 11 10        © 2010 Liberty Mutual Group of Companies. All rights          Page 1 of 2
reserved. Includes copyrighted material of Insurance
Services Office, Inc., with its permission

f. We may elect not to renew this policy by mailing or delivering written notice of non-renewal, stating the reasons for non-renewal, to you and your agent or broker, at their last mailing addresses known to us. We will mail or deliver these notices at least 45 days before the:

    (1) Expiration of the policy;  or

    (2) Anniversary date of this policy if this policy has been written for a term of more than one year.

Otherwise, we will renew this policy unless:

    (1) The First Named Insured fails to pay the renewal premium after we have expressed our willingness to renew, including a statement of renewal premium, to you or your insurance agent or broker at least 20 days before the expiration date;

    (2) Other coverage acceptable to the insured has been procured prior to the expiration date of the policy; or

    (3) The policy clearly states that it is not renewable, and is for a specific line, subclassification, or type of coverage that is not offered on a renewable basis.

g. If notice is mailed, proof of mailing will be sufficient proof of notice.

© 2010 Liberty Mutual Group of Companies. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission.

I

EXHIBIT 3                                                 13

Policy Number: TH7-661-066340-013                    Endorsement #: 7
Issued by:  LIBERTY INSURANCE CORPORATION            End. Eff. Date:

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### WASHINGTON CHANGES – FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY – UMBRELLA COVERAGE FORM

Exclusion 2.t. of SECTION I – COVERAGES is replaced by the following:

2. Exclusions

This insurance does not apply to:

t. Fungi or Bacteria

"Bodily injury", "property damage" or "personal and advertising injury" arising out of or related in any way to "fungi" or bacteria, the exposure to "fungi" or bacteria, or any claims arising from "fungi" or bacteria.  This includes but is not limited to:

(1) "Bodily injury", "property damage" or "personal and advertising injury" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence or presence of any "fungi" or bacteria on or within a building or structure, including its contents.

(2) Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are on, or are contained in, a good or product intended for humans to eat.

LCU 32 22 11 10          © 2010 Liberty Mutual Group of Companies. All rights          Page 1 of 1
                         reserved. Includes copyrighted material of Insurance
                         Services Office, Inc., with its permission.

ʅ

EXHIBIT 3

14

Policy Number: TH7-661-066340-013                    Endorsement #: 8
Issued by:   LIBERTY INSURANCE CORPORATION           End. Eff. Date:

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

WASHINGTON CHANGES – NAMED INSUREDS CONDITION

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY – UMBRELLA COVERAGE FORM

Paragraph 12.a. of SECTION IV – CONDITIONS is replaced by the following:

12. Named Insureds

a.  The First Named Insured is authorized to act and agrees to act on behalf of all persons or
organizations insured under this policy with respect to all matters pertaining to the
insurance afforded by the policy, except notice of cancellation or non-renewal.

      © 2010 Liberty Mutual Group of Companies. All rights        Page 1 of 1
reserved. Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

Policy Number: TH7-661-066340-013
Issued by: LIBERTY INSURANCE CORPORATION

Endorsement #: 9
End. Eff. Date:

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### EMPLOYEE BENEFITS LIABILITY COVERAGE LIMITATION

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY – UMBRELLA COVERAGE FORM

SCHEDULE

| Umbrella Retroactive Date | 06/01/1993 |
| --- | --- |

| Underlying Insurance – Employee Benefits Liability Coverage | |
| --- | --- |
| Limits of Insurance: | |
| $ 1,000,000 Each Employee | |
| $ 1,000,000 Aggregate | |
| Retroactive Date | 06/01/1993 |
| Insurer | Ace American Insurance Company |
| Policy Number | XSL G25840070 |
| Policy Period | 06/01/2013 to 06/01/2014 |

A. If the Underlying Insurance listed in the Schedule provides liability coverage for damages because of any act, error or omission negligently committed in the "administration" of "employee benefit programs" we will follow the terms, definitions, conditions and exclusions of the Underlying Insurance listed in the Schedule, subject to the policy period, limits of insurance, premium and all other terms, definitions, conditions and exclusions of this policy, except that the coverage provided will not be broader than the coverage provided by the Underlying Insurance listed in the Schedule.

Coverage provided under this endorsement is subject to and will reduce the limits of insurance shown in the Declarations. For the purposes of this endorsement, the Each Occurrence Limit is the most we will pay for the sum of damages arising out of:

1. An act, error or omission; or

2. A series of related acts, errors or omissions

negligently committed in the "administration" of your "employee benefit program".

B. This insurance for damages because of any act, error or omission negligently committed in the "administration" of "employee benefit programs" applies only if:

1. The act, error or omission did not take place before the Retroactive Date, if any, listed in the Schedule nor after the end of the policy period; and

2. A "claim" for damages because of an act, error or omission is first made against any insured, in accordance with Paragraph C. below, during the policy period or an Extended Reporting Period we provide under Paragraph E. below.

LCU 04 04 11 10 © 2010 Liberty Mutual Group of Companies. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission. Page 1 of 3

EXHIBIT 3

16

C. A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

1. When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

2. When settlement is made in accordance with this policy or the Underlying Insurance listed in the Schedule.

   A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim. You must see to it that we are notified promptly of an act, error or omission which may result in a "claim".

D. All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

E. Extended Reporting Period

1. You will have the right to purchase an Extended Reporting Period, as described below, if:

   a. This endorsement is canceled or not renewed; or

   b. We renew or replace this endorsement with insurance that:

      (1) Has a Retroactive Date later than the date listed in the Schedule of this endorsement; or

      (2) Does not apply to an act, error or omission on a claims-made basis.

2. The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first committed before the end of the policy period but not before the Retroactive Date, if any, listed in the Schedule. Once in effect, the Extended Reporting Period may not be canceled.

3. An Extended Reporting Period of three years is available, but only by an endorsement and for an extra charge.

   You must give us a written request for the endorsement within 60 days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

   We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

   a. The "employee benefit programs" insured;

   b. Previous types and amounts of insurance;

   c. Limits of insurance available under this endorsement for future payment of damages; and

LCU 04 04 11 10    © 2010 Liberty Mutual Group of Companies. All rights        Page 2 of 3
                  reserved. Includes copyrighted material of Insurance
                  Services Office, Inc., with its permission.

d. Other related factors.

The additional premium will not exceed 200% of the annual premium for this endorsement.

The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

4. The Extended Reporting Period does not reinstate or increase the limits of insurance applicable to any "claim" to which this endorsement applies.

F. For the purposes of this endorsement.

1. ·"Administration" means:

    a. Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

    b. Handling records in connection with the "employee benefit program"; or

    c. Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

    However, "administration" does not include handling payroll deductions.

2. "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

3. "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

4. "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

    a. Group life insurance, group accident or health insurance, dental, vision and hearing plans, and flexible spending accounts, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

    b. Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

    c. Unemployment insurance, social security benefits, workers' compensation and disability benefits; and

    d. Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies.

LCU 04 04 11 10        © 2010 Liberty Mutual Group of Companies. All rights        Page 3 of 3
                       reserved. Includes copyrighted material of Insurance
                       Services Office, Inc., with its permission.

EXHIBIT 3

18

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### WAIVER OF SUBROGATION

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART

The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Condition is amended by the addition of the following:

We waive any right of recovery we may have against any person or organization with whom you have agreed in writing prior to an "occurrence" to waive your rights because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard".

This endorsement is executed by the LIBERTY INSURANCE CORPORATION

Premium $
Effective Date
For attachment to Policy No.       TH7-661-066340-013
Audit Basis

Issued To

Dexter R. Legg   David M. Gray
SECRETARY        PRESIDENT

Countersigned by

_____
Authorized Representative

Issued                          Sales Office and No.              End. Serial No. 19

LC 24 07 08 07                                                              Page 1 of 1

Policy Number: TH7-661-066340-013                    Endorsement #: 11
Issued by:  LIBERTY INSURANCE CORPORATION            End. Eff. Date:

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### TOTAL POLLUTION EXCLUSION WITH A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY – UMBRELLA COVERAGE FORM

Exclusion 2.i. of SECTION I – COVERAGES is replaced by the following:

2.  Exclusions

This insurance does not apply to:

i.   Pollution

(1) "Bodily injury", "property damage" or "personal and advertising injury" which would not have occurred in whole or in part but for the actual, alleged, potential or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants", at any time, whether included in a product or otherwise.

Paragraph (1) of this exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

(a) At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

(b) At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants"

if the "bodily injury" or "property damage" is covered by "underlying insurance". Coverage will follow the terms, definitions, conditions and exclusions of "underlying insurance", subject to the policy period, limits of insurance, premium and all other terms, definitions, conditions and exclusions of this policy, except that coverage provided will be no broader than the coverage provided by "underlying insurance".

(2) "Pollution cost or expense".

This exclusion i. applies regardless of whether such discharge, dispersal, seepage, migration, release or escape occurs inside or outside a building or whether such "pollutant" has any function in your business, operations, premises, site or location.

LCU 26 12 11 10        © 2010 Liberty Mutual Group of Companies. All rights        Page 1 of 1
reserved. Includes copyrighted material of Insurance Services
Office, Inc., with its permission.

EXHIBIT 3

I

Policy Number: TH7-661-066340-013　　　　　　　　　　Endorsement #: 12
Issued by: LIBERTY INSURANCE CORPORATION　　　　　End. Eff. Date:

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PROFESSIONAL LIABILITY EXCLUSION INCLUDING BUT NOT LIMITED TO SPECIFIED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY – UMBRELLA COVERAGE FORM

The following exclusion is added to Paragraph 2. Exclusions of SECTION I – COVERAGES:

2. Exclusions

   This insurance does not apply to:

   Professional Liability

   Any liability, damages, loss, injury, demand, claim or "suit" arising out of the rendering of or failure to render any professional service. This includes but is not limited to:

   (1) Legal, accounting and their related services;

   (2) Preparing, approving, or failing to prepare or approve plans, maps, drawings, opinions, reports, surveys, field orders, change orders, designs or specifications;

   (3) Architectural, engineering, surveying or construction management services, including related supervisory or inspection services;

   (4) Real estate, stock, insurance or financial advisor services (including services as an agent or broker);

   (5) Medical, surgical, dental, x-ray, nursing, physical therapy or first-aid services, treatment, advice or instruction;

   (6) Any health, neutraceutical, diet or therapeutic service, treatment, advice or instruction;

   (7) Skin enhancement, hair removal or replacement, body piercing, tattoo application or removal, tanning or any form of personal grooming and appearance service, treatment, advice or instruction;

   (8) Any service, treatment, advice or instruction relating to physical fitness, including services in connection with massage, cardio-vascular fitness, body building or physical training programs;

   (9) Optometry, optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

 © 2010 Liberty Mutual Group of Companies. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission.

|

EXHIBIT 3

(10)  Services in the practice of pharmacy;

(11)  Law enforcement or firefighting services, including inspection services;

(12)  Funeral director services including handling, embalming, disposal, burial, cremation or disinterment of dead bodies or remains;

(13)  Veterinary and animal grooming services; and

(14)  Consultation or services in the practice of teaching in an educational institution.

     © 2010 Liberty Mutual Group of Companies. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LEAD EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
EXCESS COMMERCIAL GENERAL LIABILITY COVERAGE PART
GARAGE COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK

This insurance does not apply to:

1.  Any actual or alleged liability, damages, loss or injury that results directly or indirectly from the ingestion, inhalation, exposure to or absorption of lead in any form or to any claims or "suits" arising from lead;

2.  Actual or alleged "property damage" that results directly or indirectly from lead or the exposure to lead in any form or to any claims or "suits" arising from lead;

3.  Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead in any form; or

4.  Any loss, cost or expense arising out of any claim or "suit" by or on behalf of a governmental authority for damages resulting from testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead in any form.

This endorsement is executed by the LIBERTY INSURANCE CORPORATION

Premium  $
Effective Date                        Expiration Date
For attachment to Policy No           TH7-661-066340-013
Audit Basis

Issued To

Dexter R. Legg        Edward M. Gray
SECRETARY                   PRESIDENT

Countersigned by

_____
Authorized Representative

Issued                 Sales Office and No              End. Serial No  13

LC 21 06 06 07                                          Page 1 of 1

Policy Number: TH7-661-066340-013
Issued by: LIBERTY INSURANCE CORPORATION

Endorsement #: 14
End. Eff. Date:

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

#### LOGGERS PROPERTY DAMAGE LIABILITY COVERAGE

THIS ENDORSEMENT CONTAINS AN AGREEMENT WHICH MAY RESULT IN SUSPENSION OF THE COVERAGE PROVIDED BY THIS ENDORSEMENT IF BREACHED. MAKE SURE YOU READ IT CAREFULLY AND UNDERSTAND THE CONDITIONS UNDER WHICH THIS INSURANCE COULD BE SUSPENDED. IF YOU HAVE QUESTIONS, CONTACT YOUR LIBERTY MUTUAL REPRESENTATIVE.

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY - UMBRELLA COVERAGE FORM

A. The following coverage is added to SECTION I – COVERAGES:

"Loggers property damage" arising out of your "logging and lumbering operations" deemed to be caused by an "occurrence".

Coverage will follow the terms, definitions, conditions and exclusions of "underlying insurance" subject to the policy period, limits of insurance, premium and all other terms, definitions, conditions and exclusions of this policy, except that coverage provided will be no broader than the coverage provided by "underlying insurance".

B. The following exclusions are added to Paragraph 2. Exclusions of SECTION I – COVERAGES:

2. Exclusions

This insurance does not apply to:

1. "Loggers property damage" expected or intended from the standpoint of the insured.

2. "Loggers property damage" caused by fire which is begun, and spreads because of any willful or malicious act of the insured.

3. Punitive or exemplary damages, penalties, fees, double or treble damages.

4. This insurance does not apply to "property damage" due to fire or to "property damage", however, caused, to any vehicle while being loaded or unloaded in connection with your "logging and lumbering operations".

C. The following definitions are added to SECTION V – DEFINITIONS:

1. "Logging and lumbering operations" means logging, the felling and bucking of timber, log road building, sawmilling, planning, plywood, veneer pulp or paper milling, and all operations necessary or incidental to logging including railroading or trucking of felled trees or timber, maintenance of logging campsites, and the ownership, management, or reforestation of timberlands by you or on your behalf.

LMU 04 09 12 11 © 2011 Liberty Mutual Group of Companies. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission. Page 1 of 2

2. "Loggers property damage" means:

   a. "Property damage" due to fire including physical injury to timberlands, standing timber, felled or buckled timber, owned by others; and

   b. "Fire-fighting expense" resulting from your "logging and lumbering operations".

3. "Vehicle" means any land motor vehicle, trailer or semi-trailer.

4. "Fire-fighting expense" means your portion of the actual cost incurred by others in controlling or extinguishing a fire. It does not include your expenses for your "employees", or others you may hire to fulfill your obligation to use a reasonable effort to control or extinguish a fire.

5. "Forester" means a federal or state forester, including any of his or her authorized representatives.

D. The following condition is added to SECTION IV – CONDITIONS:

You agree that:

1. Slash will be burned only at such times and under such conditions as approved, directed or provided by a "forester"; and

2. "Logging and lumbering operations" will be completely suspended whenever directed by a "forester".

IF YOU BREACH THIS AGREEMENT, THE INSURANCE AFFORDED UNDER THIS ENDORSEMENT WILL BE SUSPENDED DURING THE ENTIRE PERIOD OF SUCH BREACH OF THIS AGREEMENT AND SHALL NOT APPLY TO "LOGGER'S PROPERTY DAMAGE" ARISING OUT OF "YOUR LOGGING AND LUMBERING OPERATIONS" CONDUCTED DURING THE PERIOD OF SUCH BREACH. However, the exclusion added to Section I is still in force. The agreement afforded by this endorsement shall not be prejudiced by your failure to comply with this agreement for reasons or causes over which you have no control.

     © 2011 Liberty Mutual Group of Companies. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Policy Number: TH7-661-066340-013        Endorsement #: 15
Issued by: LIBERTY INSURANCE CORPORATION        End. Eff. Date:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

COMBINED NAMED PERIL AND TIME ELEMENT POLLUTION LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY – UMBRELLA COVERAGE FORM

SCHEDULE

| Named Perils: |
| --- |
| |

A. Exclusion 2.i. of SECTION I – COVERAGES is replaced by the following:

  2. Exclusions

    This insurance does not apply to:

    i. Pollution

      (1) "Bodily injury", "property damage" or "personal and advertising injury" which would not have occurred in whole or in part but for the actual, alleged, potential or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants", at any time, whether included in a product or otherwise.

      Paragraph (1) of this exclusion does not apply to coverage for "bodily injury" or "property damage" described in (a) through (h) below.

      (a) "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

      (b) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

        (i) At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

        (ii) At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain,

LMU 26 01 12 10      © 2010 Liberty Mutual Group of Companies All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission.      Page 1 of 4

EXHIBIT 3

19320130014420026
26

treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants";

(c) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids that are needed to perform normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them, but only if the escape of fuels, lubricants or other operating fluids occurs at or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations and the fuels, lubricants or other operating fluids are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured contractor or subcontractor;

(d) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor;

(e) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of a "covered auto" or its parts, if:

   (i) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

   (ii) The "bodily injury" or "property damage" does not arise out of the operation of any equipment shown in Paragraphs f(2) and f(3) of the definition of "mobile equipment";

(f) "Bodily Injury" or "property damage" arising out of any discharge, dispersal, seepage, migration, release or escape of "pollutants" directly or indirectly caused by a Named Peril listed in the Schedule;

(g) "Bodily injury" or "property damage" included within the "products-completed operations hazard" provided that "your product" or "your work" has not at any time been:

   (i) Discarded, dumped, abandoned, thrown away by anyone; or

   (ii) Transported, handled, stored, treated, disposed of or processed as waste by anyone; or

(h) "Bodily injury" or "property damage" arising out of any discharge, dispersal, seepage, migration, release or escape of "pollutants" that meets all of the following conditions:

 © 2010 Liberty Mutual Group of Companies. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission.

EXHIBIT 3

27

(i) It was accidental and neither expected nor intended by any insured. This condition would not serve to deny coverage for a specific incident where such discharge, dispersal, seepage, migration, release or escape of "pollutants" was a result of an attempt by any insured to mitigate or avoid a situation where substantial third party "bodily injury" or "property damage" could occur;

(ii) It was demonstrable as having commenced on a specific date during the policy period;

(iii) Its commencement became known to any insured within (___14__) calendar days;

(iv) Its commencement was reported in writing to us within (__40___) calendar days of becoming known to any officer of the insured; any manager in your risk management, insurance or legal department; any employee authorized by you to give or receive notice of an "occurrence", claim or "suit"; or any insured authorized or responsible to report the commencement; and

(v) Reasonable effort was expended by the insured to terminate the discharge, dispersal, seepage, migration, release or escape of "pollutants" as soon as conditions permitted.

(2) "Pollution cost or expense".

This exclusion i. applies regardless of whether such discharge, dispersal, seepage, migration, release or escape occurs inside or outside a building or whether such "pollutant" has any function in your business, operations, premises, site or location.

B. However, nothing contained in this endorsement will operate to provide any coverage with respect to:

1. Any site or location principally used by any insured, or by others on the insured's behalf, for the handling, storage, disposal, dumping, processing or treatment of waste material;

2. Any fines or penalties;

3. Acid rain or acid runoff;

4. Clean up, removal, containment, treatment, detoxification or neutralization of pollutants situated on premises any insured owns, rents or occupies at the time of the actual discharge, dispersal, seepage, migration, release or escape of said "pollutants";

5. Any "bodily injury", "property damage" or "personal and advertising injury", or any loss, cost or expense arising out of any discharge, dispersal, migration, release or escape of said "pollutants" in violation of or non-compliance with governmental permits; or

6. Any discharge, dispersal, seepage, migration, release or escape of "pollutants" at or from any site or location designated at any time as a National Priorities List (Superfund) site by the federal government, or any site or location under any federal, state or local environmental remediation law, which is placed on a similar priorities list of sites that are eligible for clean-up using federal, state or local government funds.

C. For the purposes of this endorsement, the definition of "retained limit" of SECTION V – DEFINITIONS is replaced by the following:

EXHIBIT 3

28

"Retained limit" means as to each "occurrence":

$____1,000,000_____ and this "retained limit" will not be reduced or exhausted by defense costs, loss adjustment expenses, supplementary payments or similar amounts.

Damages paid by "underlying insurance" for claims or "suits" that would be covered by this endorsement will reduce or exhaust the "retained limit". However, in no event will amounts received through such "underlying insurance" for the payment of defense costs, loss adjustment expenses, supplementary payments or similar amounts reduce the "retained limit".

D. For the purposes of this endorsement Paragraph 1.b. of SECTION I – COVERAGES is replaced by the following:

b. We will have the right and duty to defend any "suit" seeking damages covered by this insurance, by counsel of our choice, if the "retained limit" has been exhausted by payment of damages that would be covered by this endorsement.

However, we have no duty to defend any "suit" if any other insurer has a duty to defend all or a portion of that "suit". Our right and duty to defend any "suit", including any "suit" which is pending at the time of exhaustion, end when we have exhausted the applicable limit of insurance of this policy in the payment of judgments or settlements.

We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

We have the right, but not the duty, at our expense, to defend any "suit", or to retain an attorney to associate with the insured or any counsel for the purpose of defending any claim or "suit" which we are not obligated to defend but which, in our opinion, may require payment under this policy.

The insured, at our request, will assist us and cooperate fully in the handling and defense of all claims or "suits" and in enforcing all rights to salvage, contribution, subrogation or indemnity that may affect our obligations under this policy.

If we have a duty to defend a claim or "suit" but cannot legally do so in the country in which the claim is made or the "suit" is brought, you agree to investigate and defend the claim or "suit". You may also settle the claim or "suit", but only with our prior written consent. Subject to the applicable limits of insurance, we will reimburse the insured for our share of any damages or settlement in excess of the "retained limit". We will reimburse the insured for our share of the reasonable costs of such investigation and defense.

 © 2010 Liberty Mutual Group of Companies. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Policy Number: TH7-661-066340-013
Issued by:   LIBERTY INSURANCE CORPORATION

Endorsement #: 16
End. Eff. Date:

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### DESIGNATED OPERATIONS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY – UMBRELLA COVERAGE FORM

### SCHEDULE

| Description of Designated Operation(s): |
| --- |
| Any and all operations involving aerial chemical application |

| Designated Location (If Applicable): |
| --- |

A.  The following exclusion is added to Paragraph 2. Exclusions of SECTION I – COVERAGES:

2.  **Exclusions**

This insurance does not apply to.

Designated Operations

Any liability, damages, loss, injury, demand, claim or "suit" arising out of the operation(s) described in the Schedule, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for you or for others.

Unless a "location" is designated in the Schedule, this exclusion applies regardless of where such operations are conducted. If a "location" is designated in the Schedule, this exclusion applies only to the described operations conducted at that "location".

B.  For the purposes of this endorsement:

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

LCU 21 35 11 10    © 2010 Liberty Mutual Group of Companies. All rights    Page 1 of 1
reserved. Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

|

EXHIBIT 3

Policy Number: TH7-661-066340-013
Issued by: LIBERTY INSURANCE CORPORATION

Endorsement #: 17
End. Eff. Date:

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### CRISIS MANAGEMENT COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY – UMBRELLA COVERAGE PART

### SCHEDULE

| Crisis Management Expense Aggregate Limit: | $ 50,000. |
|---|---|
| Liberty Mutual Preferred Public Relations Vendor: | Weber Shandwick |
| Liberty Mutual Claims: | 1-800-362-0000 |

A. The following is added to SECTION I – COVERAGES:

COVERAGE – CRISIS MANAGEMENT

1. Insuring Agreement

We will pay those sums necessary to reimburse you, or pay on your behalf, "crisis management expenses" arising from an "insured crisis event" to which this insurance applies. But:

a. This insurance applies only if:

(1) The "insured crisis event" commences during the policy period;

(2) The "insured crisis event" did not arise out of any fact, circumstance, pre-existing condition, or situation, that you, prior to the inception date of this policy, knew, or reasonably should have known, could lead to, cause or result in a "crisis management event";

(3) You notify us by telephone at the number listed for Liberty Mutual Claims as shown in the Schedule above within 72 hours of the "insured crisis event";

(4) The "crisis management expenses" are first incurred within 15 days after the "insured crisis event" commences;

(5) The "crisis management expenses" are not incurred more than 90 days after the commencement of the "insured crisis event"; and

(6) A claim for reimbursement of "crisis management expenses" is submitted within 90 days after incurring such "crisis management expenses".

LCU 04 11 01 12    © 2012 Liberty Mutual Group of Companies. All rights    Page 1 of 5
reserved. Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

EXHIBIT 3                                                    31

b. We will have no duty under this Crisis Management Coverage to defend the insured against any "suit" seeking damages.

c. Payment of any "crisis management expenses" under the Crisis Management Coverage endorsement is in addition to, and will not reduce, any other Limits of Insurance under this policy, and will not be determinative of our obligations under this policy with respect to any claim or "suit", including any duty to defend or indemnify any insured for such claim or "suit".

d. The amount we will pay is limited as described in Paragraph B. of the Crisis Management Coverage endorsement.

2. Exclusions

This coverage does not apply to:

a. Newly Acquired or Formed Organizations

"Crisis management expenses" incurred by any organization you newly acquire, control or form, if the "crisis management event" which led to such "crisis management expenses" commenced before you acquired, controlled or formed such organization.

b. Infectious Diseases or Illnesses

"Crisis management expenses" arising out of any infectious diseases or illnesses caused by any bacterium, virus, or fungus. However, this exclusion does not apply to "crisis management expenses" arising out of food-borne illnesses.

c. Intentional Acts by You

Intentional acts by you or your employees, provided that such acts were performed with the knowledge that it would directly lead to an "insured crisis event".

B. SECTION III – LIMITS OF INSURANCE

The Crisis Management Expense Aggregate Limit shown in the Schedule of the Crisis Management Coverage endorsement is the most we will pay for the sum of all "crisis management expense" to which this endorsement applies, regardless of the number of:

1. Insureds;

2. "Insured crisis events";

3. Persons or organizations making claims or bringing "suits".

C. The following is added to SECTION V – DEFINITIONS:

1. "Insured crisis event" means an "occurrence" resulting from a man-made emergency situation, including, but not limited to:

a. Intentional acts, except those committed by you or your employees, such as arson, a bombing, the taking of hostages, a mass shooting, or terrorism (if coverage under the Terrorism Risk Insurance Act is elected under the policy);

LCU 04 11 01 12          © 2012 Liberty Mutual Group of Companies. All rights          Page 2 of 5
                         reserved. Includes copyrighted material of Insurance
                         Services Office, Inc., with its permission

EXHIBIT 3

32

b. A building, structure or equipment collapse not caused by an act of nature;

c. An automobile, watercraft or aircraft accident;

d. Spread of food-borne illnesses; or

e. An explosion

that a "key executive" reasonably believed in good faith has resulted, or may result, in:

a. "Damages", in excess of the "retained limit" because of "bodily injury" or "property damage to which this insurance applies; and

b. Significant adverse regional or national media coverage about you.

2. "Crisis management expenses"

a. Means the following reasonable and necessary fees and expenses following an "insured crisis event":

(1) Expenses incurred directly by our Liberty Mutual Preferred Public Relations Vendor shown in the Schedule for the purpose of maintaining and restoring public confidence in you.

(2) Expenses incurred by your own public relations vendor that you currently hold on retainer for providing public relations and media management services, but only for those expenses required for the purpose of maintaining and restoring public confidence in you.

(3) Expenses incurred directly by your operations for the purpose of maintaining and restoring public confidence in you. These expenses may include printing, advertising, or mailing of materials to manage reputational risk.

(4) Costs of overtime paid to your regular non-salaried employees and costs incurred by your employees, including costs of transportation and accommodations, for the purpose of providing public relations and media services

(5) Expenses you advance to third parties directly harmed by the "insured crisis event". These expenses may include funeral, psychological or grief counseling, temporary living, and travel expenses.

b. Does not include:

(1) Any damages imposed upon any insured, including but not limited to any fine, sanction, penalty or punitive or exemplary damages, plus any equitable, injunctive or other non-monetary relief.

(2) Any expenses you incur in the investigation, defense or settlement of a claim or "suit" for "bodily injury", "property damage" or "personal and advertising injury" arising out of an "insured crisis event".

(3) The base salaries or wages of any of your "employees".

 © 2012 Liberty Mutual Group of Companies. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission.

EXHIBIT 3

19320130014420003J
33

(4) Any ransom payment or other expense incurred to meet a demand made to redeem a hostage or captive.

(5) Expenses incurred by any public relations or crisis management firm that is not listed as a Liberty Mutual Preferred Public Relations Vendor in the Schedule, or that was not held on retainer by the insured at the time of the "Crisis Management Event".

(6) Any retainers or other contracted fees you paid a professional crisis management firm, public relations, media relations, or similar firm prior to an "Insured crisis event".

(7) Damages arising out of any employment-related practices, such as refusal to employ, termination, or any other practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at any person.

3. "Key executive" means:

   a. Chief Executive Officer;

   b. Chief Operating Officer;

   c. Chief Financial Officer;

   d. President;

   e. General Counsel or Chief Legal Officer;

   f. General Partner (if you are a partnership) or Sole Proprietor (if you are a proprietorship);

   g. Any person acting in the same capacity as any position listed in Paragraph a. through e. above; and

   h. Any risk manager responsible for insurance matters, or any other lawfully elected or appointed executive officers, officials, directors, trustees or commissioners that is responsible for insurance matters.

D. The following is added to SECTION IV – CONDITIONS:

Duties in the Event of a Crisis Management Event

1. In the event you do not have your own public relations or crisis management firm available on retainer and would like to utilize a Liberty Mutual Preferred Public Relations Vendor, you must notify both the Liberty Mutual Preferred Public Relations Vendor and Liberty Mutual Claims at the phone numbers listed in the Schedule within 72 hours of a "crisis management event".

Due to the emergent nature of claims under this coverage, there may be circumstances in which expenses are incurred by a Liberty Mutual Preferred Public Vendor prior to our having the opportunity to determine whether those expenses will be covered under this policy. In those circumstances, we will reimburse or pay expenses incurred for services from our Liberty Mutual Preferred Public Relations Vendor prior to our making a coverage

 © 2012 Liberty Mutual Group of Companies. All rights reserved. Includes copyrighted material of Insurance Services Office. Inc., with its permission.

determination. We reserve the right to decline expenses incurred after we have informed you that the claim is not covered

2. In the event you choose to use your own public relations or crisis management vendor that you currently hold on retainer, or choose not to use any vendor, you must notify Liberty Mutual Claims at the phone number listed in the Schedule within 72 hours of a "crisis management event".

3. Additionally, you must provide us with written notice as soon as practicable. To the extent possible, such written notice should include:

   a. How, when and where the "crisis management event" took place;

   b. The names and addresses of any affected parties and witnesses; and

   c. The nature and location of any injury or damage arising out of the "crisis management event".

LCU 04 11 01 12          © 2012 Liberty Mutual Group of Companies. All rights          Page 5 of 5
                         reserved. Includes copyrighted material of Insurance
                         Services Office, Inc., with its permission.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AUTO EXCLUSION OF TERRORISM COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

A. The provisions of this endorsement:

1. Apply only to "bodily injury" or "property damage" arising out of the ownership, maintenance or use of any "auto" that is a "covered auto" under this Coverage Part; and

2. Supersede the provisions of any other endorsement addressing terrorism attached to this Coverage Part only with respect to "bodily injury" or "property damage" arising out of the ownership, maintenance or use of any "auto" that is a "covered auto".

B. The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are enclosed in quotation marks:

1. "Terrorism" means activities against persons, organizations or property of any nature:

a. That involve the following or preparation for the following:

(1) Use or threat of force or violence; or

(2) Commission or threat of a dangerous act; or

(3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

b. When one or both of the following applies:

(1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

(2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2. "Any injury or damage" means any injury or damage covered under any Coverage Part or underlying insurance to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part or underlying insurance.

C. The following exclusion is added:

EXCLUSION OF TERRORISM

We will not pay for "any injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   a. Physical injury that involves a substantial risk of death; or

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs C.5. or C.6. are exceeded.

With respect to this Exclusion, Paragraphs C.5. and C.6. describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to this Exclusion, coverage does not apply to "any injury or damage" that is otherwise excluded under this Coverage Part.

This endorsement is executed by the LIBERTY INSURANCE CORPORATION

Premium  $

Effective Date

Expiration Date

For attachment to Policy No.     TH7-661-066340-013

Audit Basis

Issued To

Countersigned by

Authorized Representative

Issued                    Sales Office and No.              End. Serial No. 18

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# OKLAHOMA AUTO EXCLUSION OF TERRORISM COVERAGE – UNDERLYING AUTO COVERAGE EXCLUDES TERRORISM ABOVE MINIMUM STATUTORY LIMITS

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

A. The underlying Commercial Auto policy excludes coverage for terrorism, with respect to:

1. Liability and Personal Injury Protection Coverage and only to the extent that the limit of such coverage exceeds the state compulsory or financial responsibility law minimum limits for each coverage; and

2. Uninsured and/or Underinsured Motorists Coverage and only to the extent that the limit of such coverage exceeds the minimum statutory permitted limits for Uninsured and/or Underinsured Motorists Coverage. Those limits are equal to the minimum limits permitted for Liability Coverage.

B. The provisions of Sections B. through D. of this endorsement:

1. Apply only to "bodily injury" or "property damage" arising out of the ownership, maintenance or use of any "auto" that is a "covered auto" under this Coverage Part; and

2. Supersede the provisions of any other endorsement addressing terrorism attached to this Coverage Part only with respect to "bodily injury" or "property damage" arising out of the ownership, maintenance or use of any "auto" that is a "covered auto".

C. The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are enclosed in quotation marks:

1. "Terrorism" means activities against persons, organizations or property of any nature:

a. That involve the following or preparation for the following:

(1) Use or threat of force or violence; or

(2) Commission or threat of a dangerous act; or

(3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

b. When one or both of the following applies:

(1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

(2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

EXHIBIT 3                                             38

2. "Any injury or damage" means any injury or damage covered under any Coverage Part or underlying insurance to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part or underlying insurance.

D. The following exclusion is added:

EXCLUSION OF TERRORISM

We will not pay for "any injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   a. Physical injury that involves a substantial risk of death;

   b. Protracted and obvious physical disfigurement; or

   c. Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraph D.5. or D.6. are exceeded.

With respect to this Exclusion, Paragraphs D.5. and D.6. describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to this Exclusion, coverage does not apply to "any injury or damage" that is otherwise excluded under this Coverage Part.

This endorsement is executed by the LIBERTY INSURANCE CORPORATION

Premium  $

Effective Date                          Expiration Date
For attachment to Policy No.            TH7-661-060340-013
Audit Basis

Issued To

Countersigned by
_____
Authorized Representative

Issued                    Sales Office and No.              End. Serial No. 19

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WASHINGTON AUTO EXCLUSION OF TERRORISM COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

A. The provisions of this endorsement:

1. Apply only to "bodily injury" or "property damage" arising out of the ownership, maintenance or use of any "auto" that is a "covered auto" under this Coverage Part; and

2. Supersede the provisions of any other endorsement addressing terrorism attached to this Coverage Part only with respect to "bodily injury" or "property damage" arising out of the ownership, maintenance or use of any "auto" that is a "covered auto".

B. The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are enclosed in quotation marks:

1. "Terrorism" means activities against persons, organizations or property of any nature:

   a. That involve the following or preparation for the following:

      (1) Use or threat of force or violence; or

      (2) Commission or threat of a dangerous act; or

      (3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

   b. When one or both of the following applies:

      (1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

      (2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2. "Any injury or damage" means any injury or damage covered under any Coverage Part or underlying insurance to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part or underlying insurance.

C. The following exclusion is added:

### EXCLUSION OF TERRORISM

We will not pay for "any injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". But this Exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

EXHIBIT 3                                                40

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

a. Physical injury that involves a substantial risk of death; or

b. Protracted and obvious physical disfigurement; or

c. Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraph C.5. or C.6. are exceeded.

With respect to this Exclusion, Paragraphs C.5. and C.6. describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to this Exclusion, coverage does not apply to "any injury or damage" that is otherwise excluded under this Coverage Part.

This endorsement is executed by the LIBERTY INSURANCE CORPORATION

Premium  $

Effective Date                          Expiration Date

For attachment to Policy No.            TH7-661-066340-013

Audit Basis

Issued To

Countersigned by

_____
Authorized Representative

Issued                       Sales Office and No.                   End. Serial No. 20

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ALASKA EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

A. The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising out of a "certified act of terrorism".

B. The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part or underlying insurance to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined In any applicable Coverage Part or underlying insurance.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

a. The act resulted In Insured losses In excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

This endorsement is executed by the LIBERTY INSURANCE CORPORATION

Premium $

Effective Date

For attachment to Policy No.        TH7-661-066340-013

Audit Basis

Issued To

Countersigned by

_____
Authorized Representative

Issued                          Sales Office and No.                    End. Serial No. 21

ı

EXHIBIT 3                                          42

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

A. The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

B. The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part or underlying insurance to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part or underlying insurance.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

This endorsement is executed by the LIBERTY INSURANCE CORPORATION

Premium  $

Effective Date                        Expiration Date

For attachment to Policy No.          TH7-661-066340-013

Audit Basis

Issued To

Countersigned by

                                      Authorized Representative

Issued                    Sales Office and No.              End. Serial No  22

Case 1:15-cv-00234-JL  Document 33-3  Filed 06/20/16  Page 43 of 77

### COMMERCIAL LIABILITY – UMBRELLA COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. "First Named Insured" means the person or organization shown as the Named Insured in the Declarations or, if more than one name appears, the Named Insured listed first in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under SECTION II – WHO IS AN INSURED.

Other words and phrases that appear in quotation marks have special meaning. If not defined in the section in which they first appear, refer to SECTION V – DEFINITIONS.

### SECTION I – COVERAGES

1. Insuring Agreement

    a. We will pay those sums in excess of the "retained limit" that the insured becomes legally obligated to pay as damages because of:

        (1) "Bodily Injury";

        (2) "Property damage"; or

        (3) "Personal and advertising Injury";

    to which this insurance applies. The amount we will pay for damages is limited as described in SECTION III – LIMITS OF INSURANCE.

    b. We will have the right and duty to defend any "suit" seeking damages covered by this insurance, by counsel of our choice, when:

        (1) The total applicable limits of "underlying insurance" have been exhausted by payment of judgments or settlements; or

        (2) The damages sought because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies would not be covered by "underlying insurance" or "other insurance".

    However, we have no duty to defend any "suit" if any other insurer has a duty to defend all or a portion of that "suit". Our right and duty to defend any "suit", including any "suit" which is pending at the time of exhaustion, end when we have exhausted the applicable limit of insurance of this policy in the payment of judgments or settlements.

    We may, at our discretion, investigate any "occurrence" and settle part or all of any claim or "suit" that may result.

    We have the right, but not the duty, at our expense, to defend any "suit", or to retain an attorney to associate with the insured or any counsel for the purpose of defending any claim or "suit"

EXHIBIT 3                                                    44

which we are not obligated to defend but which, in our opinion, may require payment under this policy.

The insured, at our request, will assist us and cooperate fully in the handling and defense of all claims or "suits" and in enforcing all rights to salvage, contribution, subrogation or indemnity that may affect our obligations under this policy.

If we have a duty to defend a claim or "suit" but cannot legally do so in the country in which the claim is made or the "suit" is brought, you agree to investigate and defend the claim or "suit". You may also settle the claim or "suit", but only with our prior written consent. Subject to the applicable limits of insurance, we will reimburse the insured for our share of any damages or settlement in excess of the "retained limit". We will reimburse the insured for our share of the reasonable costs of such investigation and defense.

c. This insurance applies only if:

   (1) The "bodily injury" or "property damage" occurs during the policy period or the "personal and advertising injury" is caused by an offense arising out of your business during the policy period;

   (2) The "bodily injury", "property damage" or "personal and advertising injury" is caused by an "occurrence" that takes place anywhere in the world. However, if coverage for a claim or "suit" under this policy would violate any economic or trade sanctions of the United States of America, including, but not limited to, sanctions administered and enforced by the United States Treasury Department's Office of Foreign Assets Control ("OFAC"), then coverage for that claim or "suit" will be null and void; and

   (3) Prior to the policy period, no insured listed under Paragraph 1. of SECTION II – WHO IS AN INSURED and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of SECTION II – WHO IS AN INSURED or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

   (1) Reports all, or any part of, such "bodily injury" or "property damage" to us or any other insurer;

   (2) Receives a written or oral demand or claim for damages because of such "bodily injury" or "property damage"; or

   (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

   If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" had occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

e. "Bodily injury" or "property damage" which occurs during the policy period and which was not, prior to the policy period, known to have occurred or to have begun to occur by any insured listed under Paragraph 1. of SECTION II – WHO IS AN INSURED or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or

LCU 00 01 11 10          © 2010 Liberty Mutual Group of Companies. All rights          Page 2 of 30
                 reserved. Includes copyrighted material of Insurance Services
                                Office, Inc., with its permission.

resumption of that "bodily injury" or "property damage" after the end of the policy period.

As used in c.(3), d. and e. above, an "insured listed under Paragraph 1. of SECTION II – WHO IS AN INSURED" does not include a stockholder who is not otherwise an insured.

2. Exclusions

This insurance does not apply to:

a. Expected or Intended Injury

"Bodily injury" or "property damage" arising out of an act that:

(1) Is intended by the insured; or

(2) Would be expected from the standpoint of a reasonable person in the circumstances of the insured

to cause "bodily injury" or "property damage", even if the actual "bodily injury" or "property damage" is of a different degree or type than intended or expected.

This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

b. Contractual Liability

Any obligation of the insured by reason of the assumption of liability in a contract or agreement.

This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Because of "bodily injury" or "property damage" assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

 © 2010 Liberty Mutual Group of Companies. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission.

EXHIBIT 3

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. This exclusion does not apply, however, if the "bodily injury" or "property damage" is covered by "underlying insurance". Coverage provided will follow the terms, definitions, conditions and exclusions of "underlying insurance", subject to the policy period, limits of insurance, premium and all other terms, definitions, conditions and exclusions of this policy, except that the coverage provided will be no broader than the coverage provided by "underlying insurance".

d. Workers' Compensation and Similar Laws

Any obligation of the insured under a workers' compensation law, disability benefits law, unemployment compensation law, or any similar law.

e. E.R.I.S.A.

Any obligation of the insured under the Employees' Retirement Income Security Act (E.R.I.S.A.) and any amendments thereto or any similar federal, state or local statute.

f. Auto Coverages

(1) "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others (including the supervision, hiring, employment, training, or monitoring of others by the insured) of any "auto". Use includes operation and "loading or unloading". This exclusion does not apply, however, if the "bodily injury" or "property damage" is covered by "underlying insurance". Coverage provided will follow the terms, definitions, conditions and exclusions of "underlying insurance", subject to the policy period, limits of insurance, premium and all other terms, definitions, conditions and exclusions of this policy, except that the coverage provided will be no broader than the coverage provided by "underlying insurance".

(2) Any loss, cost or expense payable under or resulting from a first party physical damage coverage, no-fault law, personal injury protection or auto medical payments coverage, or uninsured or underinsured motorist law, except to the extent coverage is specifically provided by endorsement to this policy.

g. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

LCU 00 01 11 10 © 2010 Liberty Mutual Group of Companies. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

This exclusion does not apply, however, if the "bodily injury" is covered by "underlying insurance". Coverage provided will follow the terms, definitions, conditions and exclusions of "underlying insurance", subject to the policy period, limits of insurance, premium and all other terms, definitions, conditions and exclusions of this policy, except that the coverage provided by this policy will be no broader than the coverage provided by "underlying insurance".

h. **Employment-Related Practices**

"Bodily injury" or "personal and advertising injury" to:

(1) A person arising out of any:

   (a) Refusal to employ that person;

   (b) Termination of that person's employment; or

   (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs (1)(a), (b) or (c) above is directed.

This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

i. **Pollution**

(1) "Bodily injury", "property damage" or "personal and advertising injury" which would not have occurred in whole or in part but for the actual, alleged, potential or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants", at any time, whether included in a product or otherwise.

Paragraph (1) of this exclusion does not apply to coverage described in (a) through (e) below if the "bodily injury" or "property damage" is covered by "underlying insurance". Coverage will follow the terms, definitions, conditions and exclusions of "underlying insurance", subject to the policy period, limits of insurance, premium and all other terms, definitions, conditions and exclusions of this policy, except that coverage provided will be no broader than the coverage provided by "underlying insurance".

   (a) "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

 © 2010 Liberty Mutual Group of Companies. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission.

EXHIBIT 3                                                                                                      48

(b) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

 (i) At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

 (ii) At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants";

(c) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids that are needed to perform normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them, but only if the escape of fuels, lubricants or other operating fluids occurs at or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations and the fuels, lubricants or other operating fluids are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured contractor or subcontractor;

(d) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(e) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of a "covered auto" or its parts, if:

 (i) The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

 (ii) The "bodily injury" or "property damage" does not arise out of the operation of any equipment shown in Paragraphs f(2) and f(3) of the definition of "mobile equipment".

(2) "Pollution cost or expense".

This exclusion i. applies regardless of whether such discharge, dispersal, seepage, migration, release or escape occurs inside or outside a building or whether such "pollutant" has any function in your business, operations, premises, site or location.

f. Aircraft or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or

 © 2010 Liberty Mutual Group of Companies. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission.

EXHIBIT 3

·49

entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any insured.

This exclusion does not apply if the "bodily injury" or "property damage" is covered by "underlying insurance". Coverage provided will follow the terms, definitions, conditions and exclusions of "underlying insurance", subject to the policy period, limits of insurance, premium and all other terms, definitions, conditions and exclusions of this policy, except that the coverage provided will be no broader than the coverage provided by "underlying insurance".

k. War

"Bodily injury", "property damage" or "personal and advertising injury" however caused, arising directly or indirectly out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

I. Damage to Property

"Property damage" to:

(1) Property:

(a) You own, rent or occupy including any costs or expenses incurred by you, or any other person, organization or entity for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property; or

(b) Owned or transported by the insured and arising out of the ownership, maintenance or use of a "covered auto";

(2) Premises you sell, give away, or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

 © 2010 Liberty Mutual Group of Companies. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission.

EXHIBIT 3

50

(6) That particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented, or held for rental by you.

Paragraphs (1)(b), (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraphs (3) and (4) of this exclusion do not apply to liability assumed under a written Trailer Interchange agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

m. Damage to Your Product

"Property damage" to "your product" arising out of it or any part of it.

n. Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

o. Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy, or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

p. Recall of Products, Work or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal, or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or

 © 2010 Liberty Mutual Group of Companies. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission.

dangerous condition in it.

q. Personal and Advertising Injury

"Personal and advertising injury":

(1) Arising out of an offense committed by or on behalf of the insured that:

(a) Is intended by such insured; or

(b) Would be expected from the standpoint of a reasonable person in the circumstances of such insured;

to cause injury;

(2) Arising out of the oral or written "publication" of material, if done by or at the direction of the insured with knowledge of its falsity;

(3) Arising out of the oral or written "publication" of material whose content, in the same or substantially the same form, was published, in any medium, before the beginning of the policy period;

(4) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

(5) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

(6) Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

(7) Arising out of:

(a) Infringement of, or any other violation relating to copyright, patent, trademark, service mark, trade name, trade dress or other intellectual property right;

(b) Theft of trade secret;

(c) Misappropriation; or

(d) False advertising, false marking, false designation of origin or authenticity.

However, this Paragraph (7) does not apply to:

(a) Infringement of copyright, trade dress or slogan, committed in your "advertisement";

(b) The unauthorized use in your "advertisement" of another's idea for an "advertisement"; or

(c) Oral or written "publication" of material that violates a person's right of privacy by misappropriation of that person's name or likeness;

(8) Committed by an insured whose business is:

 © 2010 Liberty Mutual Group of Companies. All rights reserved. Includes copyrighted material of insurance Services Office, Inc., with its permission.

EXHIBIT 3

l9320l3001 44200052
52

(a) Advertising, broadcasting, printing, publishing or telecasting;

(b) Designing or determining content of websites for others; or

(c) An Internet search, access, content or service provider.

However, this Paragraph (8) does not apply to Paragraphs a., b. and c. of the definition of "personal and advertising injury" under SECTION V – DEFINITIONS. For purposes of this Paragraph (8), the placing of frames, borders or links, or advertising for you or others anywhere on the Internet, is not by itself considered the business of advertising, broadcasting, printing, publishing or telecasting;

(9) Arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control;

(10) Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers;

(11) Arising out of a criminal act committed by or at the direction of the insured; or

(12) Arising out of the actual, threatened or potential release, disclosure or distribution of personal, medical or financial information.

r. Electronic Data

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the loss of, loss of use of, damage to, corruption of, inability to access or inability to manipulate "electronic data".

s. Asbestos

"Bodily injury", "property damage" or "personal and advertising injury" arising out of or caused by, or allegedly caused by, asbestos either alone or in combination with other substances or factors.

t. Fungi or Bacteria

"Bodily injury", "property damage" or "personal and advertising injury" arising out of or related in any way to "fungi" or bacteria, the exposure to "fungi" or bacteria, or any claims arising from "fungi" or bacteria. This includes but is not limited to:

(1) "Bodily injury", "property damage" or "personal and advertising injury" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage; or

(2) Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are on, or are contained in, a good or

 © 2010 Liberty Mutual Group of Companies. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission.

EXHIBIT 3

product intended for humans to eat.

u. Nuclear Energy

(1) "Bodily injury", "property damage" or "personal and advertising injury":

   (a) With respect to which an insured under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwrilers, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of insurance; or

   (b) Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

      (i) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or

      (ii) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

(2) "Bodily injury", "property damage" or "personal and advertising injury" resulting from the "hazardous properties" of "nuclear material", if:

   (a) The "nuclear material" (I) is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or (II) has been discharged or dispersed therefrom;

   (b) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

   (c) The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Paragraph (c) applies only to "property damage" to such "nuclear facility" and any property thereat.

As used in this exclusion:

(1) "Hazardous properties" includes radioactive, toxic or explosive properties.

(2) "Nuclear material" means "source material", "special nuclear material" or "by-product material".

(3) "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

(4) "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

(5) "Waste" means any waste material:

LCU 00 01 11 10     © 2010 Liberty Mutual Group of Companies. All rights     Page 11 of 30
reserved. Includes copyrighted material of Insurance Services
Office, Inc., with its permission.

EXHIBIT 3

54

    (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and

    (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

(6) "Nuclear facility" means:

    (a) Any "nuclear reactor";

    (b) Any equipment or device designed or used for:

        (i) separating the isotopes of uranium or plutonium,

        (ii) processing or utilizing "spent fuel", or

        (iii) handling, processing or packaging "waste";

    (c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    (d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

(7) "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

(8) "Property damage" includes all forms of radioactive contamination of property.

v. Recording And Distribution Of Material Or Information In Violation Of Law Exclusion

"Bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA), or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

 © 2010 Liberty Mutual Group of Companies. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission.

EXHIBIT 3

1932013001442100055
55

w. Drivers' Privacy Protection Act

"Bodily injury", "property damage" or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate the Drivers' Privacy Protection Act of 1994 (DPPA), including any amendment of or addition to such law.

x. Unlawful Discrimination

"Bodily injury", "property damage" or "personal and advertising injury" arising out of unlawful discrimination.

y. Radioactive Matter

"Bodily injury", "property damage" or "personal and advertising injury" arising out of, related in any way to, caused by or allegedly caused by, any exposure to or the presence of "radiation" and/or "radioactive matter", either alone, together or in combination with other substances or factors, whether included in a product or otherwise.

z. Securities

"Bodily injury", "property damage" or "personal and advertising injury" arising out of, related in any way to, caused by or allegedly caused by:

(1) Any violation of any securities law or any law or part of any law that regulates the sale, purchase, offer for sale, transfer or solicitation of securities, or any regulation promulgated thereunder;

(2) The purchase, sale, offer of sale, transfer or solicitation of any security, debt, insurance policy, bank deposit or financial interest or instrument;

(3) Any representations made at any time in relation to the price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument; or

(4) Any depreciation or decline in price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument.

3. Supplementary Payments

a. We will pay, with respect to any claim we investigate or settle, or any "suit" against the insured we defend:

(1) All expenses we incur.

(2) The premium for bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

(3) All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit" including actual loss of earnings because of time off from work, but not including the salaries of the insured's "employees", and in no event more than $250 a day.

(4) All court costs taxed against the insured in the "suit". However, these payments do not

 © 2010 Liberty Mutual Group of Companies. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission.

1932013001442000056

EXHIBIT 3                                                    56

include attorneys' fees or attorneys' expenses taxed against the insured.

(5) Prejudgment interest awarded against the insured on that part of the judgment we pay. However, if we make a settlement offer within the applicable limit of insurance of this policy that is acceptable to the claimant, or make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest accruing after we make such offer.

(6) Post-judgment interest awarded against the insured on that part of the judgment we pay that accrues after the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

b. When we have the right but not the duty to defend the insured and elect to participate in the defense, we will pay our own expenses but will not contribute to the expenses of the insured or the "underlying insurer".

c. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

(1) The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

(2) This insurance applies to such liability assumed by the insured;

(3) The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

(4) The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

(5) The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

(6) The indemnitee:

(a) Agrees in writing to:

(i) Cooperate with us in the investigation, settlement or defense of the "suit";

(ii) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(iii) Notify any other insurer whose coverage is available to the indemnitee; and

(iv) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(b) Provides us with written authorization to:

(i) Obtain records and other information related to the "suit"; and

LCU 00 01 11 10          © 2010 Liberty Mutual Group of Companies. All rights          Page 14 of 30
reserved. Includes copyrighted material of Insurance Services
Office, Inc., with its permission.

EXHIBIT 3                                    57

(ii) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of SECTION I – COVERAGES, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments, or settlements, or the conditions set forth above, or the terms of the agreement described in Paragraph (6) above, are no longer met

### SECTION II – WHO IS AN INSURED

- 1.  If you are designated in the Declarations as:

    a.  An individual, you and your spouse are insureds but only with respect to the conduct of a business of which you are the sole owner.

    b.  A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    c.  A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    d.  An organization other than a partnership, joint venture, or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

    e.  A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

- 2.  Each of the following is also an insured:

    a.  Your "volunteer workers" but only while performing duties related to the conduct of your business, your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for.

    (1)  "Bodily injury" or "personal and advertising injury":

        (a)  To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" in the course of his or her employment or performing duties related to the conduct of your business or to your other "volunteer workers" while performing duties related to the conduct of your business;

        (b)  To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker"

        © 2010 Liberty Mutual Group of Companies. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission.

EXHIBIT 3                                                                                    58

as a consequence of Paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above;

(d) Arising out of his or her providing or failing to provide professional health care services; or

(e) Arising out of practicing for, or participating in, any sports or athletic contest or exhibition that you sponsor, unless the "employee" or "volunteer worker" is an insured for the "bodily injury" or "personal and advertising injury" on "underlying insurance".

(2) "Property damage" to property:

(a) Owned, occupied, used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

(3) "Bodily injury", "property damage" or "personal and advertising injury" arising out of the ownership, maintenance or use of an "auto", except as provided in Paragraph f. below.

b. Any person (other than your "employee") or any organization while acting as your real estate manager, but this does not apply with respect to the use of any vehicle owned by such person or organization.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative, if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

e. Any person or organization included as an additional insured under "underlying insurance", but not for broader coverage than is provided by the "underlying insurance". When coverage provided to an additional insured is required by a contract or agreement, the most we will pay on behalf of that additional insured is the minimum amount of insurance required by the contract or agreement, less any amounts payable by any "underlying insurance" or otherwise retained.

f. Any person while using with your permission a "covered auto" for which insurance is provided to you under this policy and any person or organization legally responsible for its use, but only if that person is an insured with respect to liability arising out of the ownership, maintenance, use or entrustment to others of "covered autos" on "underlying insurance".

3. Any organization you newly acquire or form, other than a partnership, joint venture, or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured under this policy if there is no other similar insurance available to that organization and that organization is a Named Insured under "underlying insurance". However:

© 2010 Liberty Mutual Group of Companies. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission.

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage does not apply to "bodily injury" or "property damage" that occurred before you acquired the organization; and

c. Coverage does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture, or limited liability company that is not shown as a Named Insured in the Declarations.

SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of all damages, except damages because of:

   a. Injury or damage included in the "products-completed operations hazard"; and

   b. Injury or damage arising out of the ownership, maintenance, use or entrustment to others of an "auto".

3. The Products-Completed Operations Aggregate Limit is the most we will pay for the sum of all damages for "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph 2. or 3. above; if either applies, the Each Occurrence Limit is the most we will pay for the sum of damages because of all injury or damage arising out of any one "occurrence".

5. The Limits of Insurance apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

6. For the purposes of applying the Each Occurrence limit:

   a. All "bodily injury" and "property damage" arising out of continuous or repeated exposure to substantially the same general harmful conditions will be considered as the result of one "occurrence"; and

   b. All "personal and advertising injury" arising out of a series of related offenses, including all repetitions or reproductions, will be considered as the result of one and the same "occurrence". Two or more offenses within the definition of "personal and advertising injury", each of which


© 2010 Liberty Mutual Group of Companies. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission.

EXHIBIT 3                                                                    60

involves "publication" of material, will not be deemed to be more than one "occurrence" merely because the material in one "publication" is not identical to the material in another "publication", or because the "publications" are made in different media.

## SECTION IV – CONDITIONS

1. Appeals

   If the insured or the "underlying insurers" elect not to appeal a judgment that may require payments under this policy, we may elect to make such appeal at our own cost. If we appeal, we then will be liable for the taxable costs, expenses and interest incidental to the appeal, which will be in addition to the limits of insurance of this policy, unless provided otherwise on any "underlying insurance". If we appeal, the insured will cooperate with us, at our request and at our expense, in the prosecution of the appeal.

2. Bankruptcy

   a. Bankruptcy or insolvency of the insured or the insured's estate will not relieve us of our obligation under this policy.

   b. Bankruptcy of an "underlying insurer" will not relieve us of our obligations under this policy.

   However, this insurance will not replace the insurance afforded by the "underlying insurance" in the event of the bankruptcy, insolvency or any other inability to pay of the "underlying insurer" or the insured to the extent it is self-insured. This insurance will apply as if the "underlying insurance" were in full effect.

3. Duties In the Event of Occurrence, Claim or Suit

   a. You must see to it that we are notified promptly of any "occurrence", which may result in a claim to which this insurance must apply, even if the insured must satisfy a "retained limit" before this insurance applies. To the extent possible notice should include:

      (1) How, when and where the "occurrence" took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence".

   b. If a claim is made or "suit" is brought to which this policy may apply, you must see to it that we receive prompt written notice of the claim or "suit", even if the insured must satisfy a "retained limit" before this insurance applies. You must notify us if an applicable limit of "underlying insurance" is exhausted, even if we do not have a duty to defend.

   c. You and any involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation, settlement, or defense of the claim or "suit";

LCU 00 01 11 10          © 2010 Liberty Mutual Group of Companies. All rights          Page 18 of 30
                         reserved. Includes copyrighted material of Insurance Services
                         Office, Inc., with its permission.

EXHIBIT 3                                    61

ιυυιυιυυυ,ΗΗΔ∪ιιιιιι∠

(4) At our request, instruct all insurers that issued "underlying insurance" to cooperate with us in our handling of the claim or "suit", and make available all materials and documents in their claims files; and

(5) Assist us, upon our request, in the enforcement of any rights against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d.   No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

e.   In addition to the notice requirement of Paragraph 3.a. above, you must promptly notify us if:

   (1) Any "occurrence" results in any of the following injuries:

      (a) A death;

      (b) An amputation of any extremity;

      (c) Any serious head or brain injury (including skull fracture or loss of sight of either or both eyes);

      (d) Any injury to the spinal cord, paraplegia or quadriplegia;

      (e) Serious burns; or

      (f) Any other serious "bodily injury" which the insured believes is likely to involve this policy;

   (2) Any "suit" to which this insurance may apply is a class action lawsuit; or

   (3) You expect the injury or damage from any "occurrence" to exceed 50% of the "retained limit".

As used in this Paragraph 3., promptly means as soon as practicable after knowledge of the "occurrence" has been reported to an "executive officer" of the insured or to the "employee" designated by the insured to give us notice.

4.   Legal Action Against Us

No person or organization has the right under this policy:

a.   To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b.   To sue us on this policy unless all of its terms have been fully complied with.

If a person or organization sues us to recover on an agreed settlement or on a final judgment against an insured, we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance.  An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

5.   Other Insurance

This insurance is excess over, and will not share or contribute, with any "other insurance", whether primary, excess, contingent or on any other basis.  This condition will not apply to insurance

1932013001-44200063
62

specifically written as excess over this policy.

6.  Audit and Premium

    a.  You agree to pay the premium when due.

    b.  The Premium shown as Advance Premium on the Declarations is flat charge unless a rate is shown.

    c.  If a rate is shown on the policy's Declarations, the Advance Premium shown in the Declarations is an estimated premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the First Named Insured. The due date for audit premiums is the date shown as the due date on the bill. If the sum of the Advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the First Named Insured, subject to the Minimum Premium, if any, shown in the Declarations.

    d.  The First Named Insured must keep records of the information we need for premium computation and make available to us or send us this information at such times as we may request.

    e.  We may examine your books and records as they relate to this policy at any time during the policy period and for up to three (3) years after the expiration or termination of this policy.

    f.  We may, at our option, make an additional premium charge for any organization that you acquire or form during the policy period.

7.  Representations or Fraud

    By accepting this policy you agree:

    a.  The statements in the Declarations are accurate, complete and based on information and representations you provided or made to us;

    b.  We have issued this policy in reliance upon your information and representations:

    c.  The policy will be void in any case of fraud by you as it relates to this policy or any claim under this policy:

    d.  This policy will provide no coverage for any claim in the event you have made a material misrepresentation that relates to that claim, without regard to whether such misrepresentation occurs before, during or after the policy period; and

    e.  There will not be coverage under this policy for hazards you fail to disclose at the inception of the policy period, except that unintentional failure of the Named Insured to disclose all hazards existing at the inception of this policy shall not be a basis for denial of any coverage afforded by this policy. However, you must report the hazard to us as soon as practical after discovering the failure to disclose. This provision does not affect our right to collect additional premium or exercise our right of cancellation or non-renewal.

8.  Separation of Insureds

    Except with respect to the limits of insurance, and any rights or duties specifically assigned to the First Named Insured, this insurance applies:

EXHIBIT 3

1932013001441200064
63

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

9. Transfer of Rights of Recovery Against Others to Us

   a. If any insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured will do all that is necessary to secure such rights and must help us enforce them. The insured will do nothing after loss to prejudice such rights.

   b. Any recoveries shall be applied as follows:

      (1) Any person or organization, including the insured, that has paid an amount in excess of the applicable limit of insurance of this policy will be reimbursed first;

      (2) We then will be reimbursed up to the amount we have paid; and

      (3) Lastly, any person or organization, including the insured, that has paid an amount over which this policy is excess is entitled to claim the remainder.

   Expenses incurred by us in the exercise of the rights of recovery shall be apportioned among the persons or organizations, including the insured, in the ratio of their respective recoveries as finally settled.

10. Cancellation and Non-Renewal

    a. The First Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

    b. We may cancel this policy by mailing or delivering to the First Named Insured written notice of cancellation at least:

       (1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

       (2) 30 days before the effective date of cancellation if we cancel for any other reason.

    c. We will mail or deliver our notice to the First Named Insured's last mailing address known to us.

    d. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date at 12:01 AM.

    e. If this policy is cancelled, we will send the First Named Insured any premium refund due. If we cancel, the refund will be pro rata, based upon the portion of the original policy period that the policy was actually in effect. If the First Named Insured cancels, the refund will be less than pro rata, and will be subject to the Minimum Premium, if any, shown in the Declarations. The cancellation will be effective even if we have not made or offered a refund. Our check, mailed or delivered, shall be sufficient tender of any refund due you.

    f. If we decide not to renew this policy, we will mail or deliver to the First Named Insured shown in the Declarations written notice of the non-renewal not less than 30 days before the expiration date.

    g. If notice is mailed, proof of mailing will be sufficient proof of notice.

     © 2010 Liberty Mutual Group of Companies. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission.

11. Inspection

We have the right but are not obligated to inspect your premises and operations at any time. Our inspections are not safety inspections. They relate only to the insurability of your premises and operations and the premiums to be charged. We may give you reports on the conditions that we find. We may also recommend changes. However, we do not undertake to perform the duty of you or any person or organization to provide for the health or safety of your "employees" or the public. We do not warrant the health and safety conditions of your premises or operations, nor do we represent or certify that your premises or operations comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization, which makes insurance inspections, surveys, reports or recommendations for us.

12. Named Insureds

a. The First Named Insured is authorized to act and agrees to act on behalf of all persons or organizations insured under this policy with respect to all matters pertaining to the insurance afforded by the policy.

b. Each Named Insured is jointly and severally liable for:

(1) All premiums due under this policy; and

(2) Any other financial obligations of any Named Insured to us arising out of any agreements contained in this policy.

13. Maintenance of Underlying Insurance

Throughout the policy period you must ensure that:

a. "Underlying insurance" that is self-insurance provides coverage at least as broad as the coverage provided under this policy;

b. All "underlying insurance" remains in effect;

c. The terms, definitions, conditions, and exclusions of all "underlying insurance" do not materially change;

d. The total applicable limits of all "underlying insurance" do not decrease, except for any reduction or exhaustion of aggregate limits by payment of judgments or settlements; and

e. Any renewals or replacements of any "underlying insurance" provide equivalent coverage to and afford limits of insurance equal to or greater than the policy being renewed or replaced.

If you fail to comply with Paragraphs b. through e. above, regardless of the reason or reasons, this policy's coverage will apply as if the "underlying insurance" were still in full effect with the terms, definitions, conditions, exclusions and limits that existed on the effective date of this policy. However, if an exclusion is added to "underlying insurance" after the effective date of this policy, then such exclusion is automatically added to this policy effective on the same date that it was effective on the "underlying insurance".


© 2010 Liberty Mutual Group of Companies. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission.

EXHIBIT 3

1932013001142B0066
65

### 14. Transfer of Your Rights and Duties

Your rights and duties under this policy may not be transferred without our written consent.

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. Until your legal representatives is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property. However, in such event, notice of cancellation of this policy sent to the First Named Insured and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

### 15. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

### SECTION V – DEFINITIONS

1. "Advertisement" means a paid announcement that is broadcast or published in the print, broadcast or electronic media to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a. Announcements that are published include material placed on the Internet or on similar electronic means of communication; and

   b. Regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an "advertisement".

2. "Auto" means:

   a. A land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment; or

   b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

   However, "auto" does not include "mobile equipment".

3. "Bodily injury" means:

   a. Bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time; and

   b. Mental anguish or injury, shock or humiliation arising out of injury as defined in Paragraph a. above.

   "Bodily injury" does not include injury that falls within the definition of "personal and advertising injury".

4. "Covered auto" means only an "auto" for which coverage is provided on "underlying insurance".

5. "Electronic data" means information, facts or programs stored as or on, created or used on, or

 © 2010 Liberty Mutual Group of Companies. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission.

EXHIBIT 3 66

transmitted to or from computer software, including but not limited to systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

6. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

7. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

8. "Fungi" mean any type or form of fungus including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by "fungi".

9. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

10. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b. You have failed to fulfill the terms of a contract or agreement;

    if such property can be restored to use by:

    a. The repair, replacement, adjustment, or removal of "your product" or "your work"; or

    b. Your fulfilling the terms of the contract or agreement.

11. "Insured contract" means:

    a. A contract for lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    b. A sidetrack agreement;

    c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    e. An elevator maintenance agreement;

    f. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees"; or

    g. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under

 © 2010 Liberty Mutual Group of Companies. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission.

EXHIBIT 3

t932013001442000668
67

which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraphs f. and g. above do not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver;

(3) That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a "covered auto" over a route or territory that the person or organization is authorized to serve by public authority;

(4) That indemnifies an architect, engineer, or surveyor for injury or damage arising out of: 'if'

(a) Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(5) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the Insured's rendering or failure to render professional services, including those listed in Paragraph (4) above and supervisory, inspection, architectural or engineering activities.

12. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

13. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

14. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

LCU 00 01 11 10 © 2010 Liberty Mutual Group of Companies All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission. Page 25 of 30

EXHIBIT 3

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in Paragraphs a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers; and

f. Vehicles not described in Paragraphs a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where such vehicles are licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

15. "Occurrence" means:

a. With respect to "bodily injury" or "property damage", an accident, including continuous or repeated exposure to substantially the same general harmful conditions; or

b. With respect to "personal and advertising injury", an offense or series of related offenses.

 © 2010 Liberty Mutual Group of Companies. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission.

EXHIBIT 3                                      69

16. "Other insurance" means:

   a. Any valid and collectible insurance (except "underlying insurance") that insures any insured, even if the coverage is unavailable or uncollectible as a consequence of a breach, by any insured under this policy, of the terms or conditions of that insurance; plus

   b. Any amount retained under any self-insurance program that is not "underlying insurance".

   "Other insurance" does not include any insurance specifically written as excess over this policy.

17. "Personal and advertising injury" means injury caused by one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. Wrongful eviction from, wrongful entry into or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written "publication" directly to the public at large, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. (1) Oral or written "publication" directly to the public at large, in any manner, of material that violates a person's right of privacy; or

      (2) Oral or written "publication" of material, in any manner, that violates a person's right of privacy by misappropriation of that person's name or likeness;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

   "Bodily injury" that arises out of "personal and advertising injury" will be considered "personal and advertising injury".

18. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

19. "Pollution cost or expense" means any loss, cost or expense arising out of any:

   a. Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants"; or

   b. Claim or "suit" by or on behalf of a government authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants".

LCU 00 01 11 10        © 2010 Liberty Mutual Group of Companies. All rights         Page 27 of 30
                       reserved. Includes copyrighted material of Insurance Services
                       Office, Inc., with its permission.

EXHIBIT 3                                                                70

20. "Products-completed operations hazard":

- a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

  (1) Products that are still in your physical possession; or

  (2) Work that has not yet been completed or abandoned. "Your work" will be deemed completed at the earliest of the following times:

    (a) When all of the work called for in your contract has been completed.

    (b) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

    (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

  Work that may need service, maintenance, correction, repair or replacement but which is otherwise complete, will be treated as completed.

- b. This hazard does not include "bodily injury" or "property damage" arising out of:

  (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned by you created by the "loading or unloading" of that vehicle by any insured; or

  (2) The existence of tools, uninstalled equipment, or abandoned or unused materials.

21. "Property damage" means:

- a. Physical injury to tangible property, including all resulting loss of use of that property   All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

- b. Loss of use of tangible property that is not physically injured.   All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.

22. "Publication" means an insured's act of disseminating or broadcasting material or information. "Publication" does not include the wrongful appropriation, interception or retrieval of material or information by a third party or the insured's dissemination or broadcasting of material or information to a person who is the subject of the material or the information

23. "Radiation" and/or "radioactive matter" includes, but is not limited to, ionizing radiation (either directly from unstable atomic nuclei or atoms, or as a consequence of a nuclear reaction), radioactive isotopes, alpha or beta particles or rays, gamma rays, X-Rays, photons, nucleons, including protons, neutrons and electrons.

24. "Retained limit" means as to each "occurrence":

- a. The total applicable limits of the "underlying insurance" plus any applicable "other insurance".

LCU 00 01 11 10            © 2010 Liberty Mutual Group of Companies  All rights            Page 28 of 30
                        reserved. Includes copyrighted material of Insurance Services
                                    Office, Inc., with its permission.

EXHIBIT 3

However, if the sum of the "underlying insurance" plus the "other insurance" is:

(1) Greater than the amount listed in the Declarations under the Schedule for that "underlying insurance", our "retained limit" will be the greater amount; or

(2) Less than the amount listed in the Declarations under the Schedule for that "underlying insurance", our "retained limit" will be the amount listed in the Schedule.

The "retained limit" will be reduced by the amount by which the applicable "underlying insurance" has been reduced due to the reduction or exhaustion of the applicable aggregate limit of insurance by payment of judgments or settlements.

The "retained limit" will not be reduced or exhausted by defense costs, loss adjustment expenses, supplementary payments or similar amounts that reduce or exhaust the policy limits of "underlying insurance".

If some or all of the "underlying insurance" is not available due to breach of policy condition, our "retained limit" will be the amount listed in the Declarations under the Schedule for that "underlying insurance", plus "other insurance".

b. If there is no applicable "underlying insurance", our "retained limit" will equal the greater of the Self-Insured Retention shown in the Declarations or any applicable "other insurance". The Self-Insured Retention will be reduced by Supplementary Payments we pay in the investigation or settlement of any claim, or in the defense of any "suit" against the insured we defend. The Self-Insured Retention does not apply to "occurrences" that would have been covered by "underlying insurance" but for the exhaustion of applicable limits.

In calculating the extent to which the underlying aggregate limits have been reduced or exhausted, the "retained limit" in Paragraph a. above will be reduced only by payment of judgments or settlements because of "bodily injury" and "property damage" that occurs during our policy period and "personal and advertising injury" that is caused by an offense arising out of your business during our policy period.

25. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged and can be awarded.

"Suit" includes:

a. An arbitration proceeding in which such damages are claimed and can be awarded and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and can be awarded and to which the insured submits with our consent.

26. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

27. "Underlying insurance" means any policies of insurance or self-insurance listed in the Declarations under the Schedule of "underlying insurance".

28. "Underlying insurer" means any insurer who provides any policy of insurance listed in the Declarations under the Schedule of "underlying insurance" and any insurer who provides "other insurance".

LCU 00 01 11 10          © 2010 Liberty Mutual Group of Companies. All rights          Page 29 of 30
reserved. Includes copyrighted material of Insurance Services
Office, Inc., with its permission.

29. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and who is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

30. "Your product":

    a. Means:

       (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

           (a) You;

           (b) Others trading under your name; or

           (c) A person or organization whose business or assets you have acquired, and

       (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products

    b. Includes:

       (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

       (2) The providing of or failure to provide warnings or instructions.

    c. Does not include vending machines or other property rented to or located for the use of others but not sold.

31. "Your work":

    a. Means:

       (1) Work or operations performed by you or on your behalf; and

       (2) Materials, parts, or equipment furnished in connection with such work or operations.

    b. Includes:

       (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

       (2) The providing of or failure to provide warnings or instructions.

 © 2010 Liberty Mutual Group of Companies. All rights reserved. Includes copyrighted material of Insurance Services Office, Inc., with its permission.

## EXHIBIT 3

## POLICYHOLDER DISCLOSURE

## TERRORISM RISK INSURANCE ACT

THIS ENDORSEMENT IS MADE PART OF YOUR POLICY PURSUANT TO THE TERRORISM RISK INSURANCE ACT.

In accordance with the Terrorism Risk Insurance Act, including all amendments, ("TRIA" or the "Act"), we are required to provide you with a notice of the portion of your premium attributable to coverage for "certified acts of terrorism," the federal share of payment of losses from such acts, and the limitation or "cap" on our liability under the Act.

Disclosure of Premium

The Company has made available coverage for "certified acts of terrorism" as defined in the Act. If purchased, the portion of your premium attributable to coverage for "certified acts of terrorism" is shown In the Declarations, Declarations Extension Schedule or elsewhere by endorsement In your policy.

Federal Participation In Payment Of Terrorism Losses

If an Individual insurer's losses exceed a deductible amount specified in the Act, the federal government will reimburse the insurer for 85% of losses paid in excess of the deductible, provided that aggregate industry losses from a "certified act of terrorism" exceed $100 million.

Cap On Insurer Participation In Payment Of Terrorism Losses

If aggregate insured losses attributable to "certified acts of terrorism" exceed $100 billion in a calendar year and we have met our deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion. Nor shall Treasury make any payment for any portion of the amount of such losses that exceeds $100 billion. In such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

I

## EXHIBIT 3

Policy Number  TH7-661-066340-013
Issued by      LIBERTY INSURANCE CORPORATION

### PARTICIPATING PROVISION

You may be eligible to participate in the distribution of surplus funds of the company through any dividends that may be declared for this policy. A declaration or payment of dividends is not guaranteed. The amount of any dividends that may be declared shall be to the extent, and upon the conditions fixed and determined by the Board of Directors and in compliance with any laws that apply.

In witness whereof, the company has caused this policy to be signed by its President and its Secretary.

Dexter R. Legg

SECRETARY

David McJ

PRESIDENT

© 2013 Liberty Mutual Insurance. All rights reserved.

EXHIBIT 3

BRITNI MYERS
UNICO GROUP INC
4435 O ST STE 200
LINCOLN NE 68510-1800

CNI 90 05 01 12
Producer

EXHIBIT 3

Plum Creek Timber Company, Inc.
999 3rd Ave, Suite 4300
Seattle, WA 98104

EXHIBIT 3                                                    77

Endorsement number 23 for policy number TH7-661-066340-013

Named Insured Plum Creek Timber Company, Inc.

This endorsement is effective  06/01/2013        and will terminate with the policy. It is issued by the company designated in the Declaration. All other provisions of the policy remain unchanged.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Change Endorsement

Commercial Liability – Umbrella Declarations, LCU 00 02 11 10 is amended as follows:

Item 6. Underlying Insurance is amended as follows:

Add:
Employers Liability – Self Insured XWC for MT. & WA only
Insurer: ACE American Insurance Company
Policy Period: 06/01/2013 to 06/01/2014
Policy Number: WCU C47329954
Limits: 2,000,000/2,000,000/2,000,000

Add:
Non-Owned Aircraft Liability
Insurer: Starr Corporate Non-Owned Aircraft Insurance Policy
Policy Period: 06/01/2013 to 06/01/2014
Policy Number: 9958-9529-03
Limits: 10,000,000/10,000,000/10,000,000

Delete:
Non-Owned Aircraft Liability
Insurer: Federal Insurance Company
Policy Period: 6/1/13 to 6/1/14
Policy Number: 9958-9529-03
Limits: 10,000,000/10,000,000/10,000,000

Delete:
Employers Liability
Insurer: ACE American Insurance Company
Policy Period: 6/1/13 to 6/1/14
Policy Number: WCU C47329954
Limits: 2,000,000/2,000,000/2,000,000

No Premium Change

All other terms and conditions remain unchanged.

Issued: dcb   10/23/2013              IC9999
                                      10-11