# Exhibit 1

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

BRENDAN KELLY,
    Plaintiff,

vs.

LIBERTY INSURANCE CORPORATION d/b/a
LIBERTY MUTUAL,
    Defendant.

Civil Action No. 1:15-cv-234-JL

## SUPPLEMENTARY DECLARATION OF LISA DUETSCH

I, Lisa Duetsch, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I have actual personal knowledge of the facts set forth below;

2. I began working at Plum Creek Timber Company in January of 2005, and I had responsibilities related to risk management and insurance from my date of hire;

3. In 2008, I assumed the title of Risk Manager;

4. While I served as Risk Manager, my direct supervisor was Kent Jones;

5. Kent Jones instructed me to review and execute the uninsured/underinsured motorist selection/rejection forms that were provided to Plum Creek by its insurance broker;

6. Based on conversations I had with Mr. Jones, I came to understand that Plum Creek wished to reject underinsured/uninsured motorist coverage in those states in which it was permitted to do so;

7. I further understood that it was in the best interest of Plum Creek to reject underinsured/uninsured motorist coverage in states in which it was permitted to do so because

Plum Creek had already secured insurance coverage for its employees in the form of workers' compensation insurance;

8. From the time I began working at Plum Creek, Mr. Jones supplied me with written Delegations of Authority which affirmatively authorized me, among other things, to accept or reject uninsured/underinsured motorist coverage on behalf of Plum Creek and to execute underinsured/uninsured motorist selection/rejection forms on behalf of Plum Creek;

9. During the ten years in which I worked for Plum Creek, I kept a copy of each Delegation of Authority provided to me by Mr. Jones in a folder on the desktop of my company computer and referred to these documents regularly to ensure that I was acting within the scope of my authority;

10. The document attached hereto as Exhibit A is the written Delegation of Authority Mr. Jones provided to me prior to May 2013;

11. I understood this document, together with Mr. Jones' instructions, to authorize me to execute the uninsured/underinsured motorist coverage selection/rejection forms that were the subject of my previous Declaration dated May 20, 2016;

12. Based on the instructions I received from Mr. Jones and the written Delegation of Authority, I executed underinsured/uninsured motorist coverage selection/rejection forms on behalf of Plum Creek beginning in 2005 until I left Plum Creek in 2015;

13. Mr. Jones was aware that I executed underinsured/uninsured motorist coverage selection/rejection forms on behalf of Plum Creek so as to reject such coverage;

14. I understood that if I failed to reject underinsured/uninsured motorist coverage on behalf of Plum Creek that this would have been inconsistent with the position of Plum Creek and with the instructions I was given by Mr. Jones.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 9/29/16 (date).

_____
Lisa Duetsch

58912586

# Exhibit A

# *memorandum*



September 20, 2016

TO:         Donna Bolender, Renee Erickson, Minta Johnson, Lisa Duetsch, Rick Clark

FROM:       Kent Jones, Director of Accounting / Shared Services

SUBJECT:    Delegation of Authority – updated July 2013

The following delegation of authority is provided to Accounting Unit 034800:

1) Credit related activities
    a) Extension of credit to customers
        i) *Senior Manager (DB)* may approve credit lines up to $500,000
        ii) *Analyst, Financial Services (JP)* may approve credit lines up to $100,000
        i) *Shared Services Accountant (AO)* may approve credit lines up to $50,000
    b) Write-offs of uncollectible accounts
        i) *Senior Manager* may approve account write-offs up to $25,000
            (1) Account write-offs greater than $25,000 will be based on discussions with the respective product line sales manager / resource manager, general manager, and/or operations vice president.
            (2) The legal department will also be involved as appropriate.
        ii) *Analyst, Financial Services (JP) )* may approve account write-offs up to $1,000
        iii) No approval is required for account tolerance write-offs *(e.g., < $30.00)*
    c) All confidentiality agreement to be signed by the Senior Manager (DB), Director or an Officer (e.g., VP – Tom Ray) of the Company.

*All Department Managers* (as applicable to their area of responsibility – e.g. Payroll vs. Property taxes vs. Risk Management, etc.)

2) Payment required under applicable law – **up to $500K**
    a) Director will approve payments >$500K, up to $1M
        i) Exception – bimonthly payroll tax payments – up to $750K (as tax payments can commonly be in the $500-600K range)
    b) Any payments **greater than $1M** need to be approved via VP/Chief Accounting Officer.
        i) Approval can be via e-mail
    c) Examples
        i) Federal, state, and local payroll related disbursements (e.g., tax payments, etc.).
        ii) Garnishments (AP; payroll; etc.)

3) All department level budgeted / normal costs (e.g., operating expenses; supplies; services; training classes; CPE; expense reports; etc.)
   a) Examples – Envelopes; check stock; printer cartridges; shredding services; subscriptions and memberships (e.g., APA, LUG, Balance Consulting; etc.)
   b) All training courses (travel based, internet, etc. ) will be reviewed with director prior to booking / purchasing.
   c) Other
      i) Columbia Falls "Petty Cash" account
         (1) Finance Manager (DB) <u>cannot</u> approve payment of this account.
            (a) Either Manager – Risk, Sr. Manager or Director to approve
      ii) Payments on AFE's originated or managed by the accounting unit / applicable manager.
      iii) Expense reports
         (1) If originated by a Manager, a Sr. Manager or Director to approve
      iv) Purchase Cards
         (1) Employees issued a purchase card for department and /or company expenses (e.g., rent for records retention; one time vendor payment; etc.) are authorized up to the current limit on the card.

*Senior Manager (DB) – AP*

4) AP & Tax (property)
   *a)* Purchase Card Invoices (s) / Drafts
   *b)* Manufacturing / CFO Property Taxes

*Manager – Risk*

5) Risk Management Activities
   a) Payment of all insurance costs associated with annual or other policy renewals, as approved by the CFO and/or COA.
   b) Payment of all periodic insurance and risk management related costs, such as workers' compensation self-insurance fees in Washington and Montana, up to $50,000
   c) Payment of all incidentals insurance costs up to $50,000.
      i) Examples include policy audits and retro-premiums, Payment of product line associated costs, including bonds, vehicle accident settlements, etc.
         (1) These costs are cleared / relayed to the respective business units.
   d) Establishing or modifying contractual insurance limits for vendor contracts or other third party activities
   e) Signing of contracts, agreements, statements, etc

      i) Director – Insurance contracts; Insurance amendments; Annual Brokerage Agreements; etc.
      ii) Risk Manager - Auto UI/UnderI forms; insurance inquiries & statements; TRIA forms; etc.
      iii) The Legal department will be consulted as appropriate (i.e. Contracts >$1M in costs, higher risk contracts such as D&O, new contract forms, etc.)
6) Auto Fleet Activities
   a) Signing of manufacturer annual incentive agreements (e.g., CAPs), POA's to licensee vehicles, and other like "administrative" items.
   b) Lease Plan Invoice(s) and related leasing items for established vehicle agreement(s)

*Manager-Workers Compensation*

7) Workers Compensation Activities
   a) Payment of Monthly invoice from third party administrator (TPA) – up to $200,000
      i) Invoices may include third party re-imbursement for claim payments, administration fees, settlement re-imbursement, and like costs.
   b) Payment of periodic (e.g., quarterly or annual) self insurance and like fees assessed by States or Self Insurance Agencies/ Guarantee funds and like entities – up to $50,000 (referenced / identical to 5b above)
   c) Payment of legal defense bills specific to work comp but not specific to a claim – up to $1,000
      i) All other costs to be approved / reviewed by legal (e.g., Rosemary Daszkiewicz)

For those areas where fully crossed training (RM and WC) has occurred and work is shared (e.g., bonds), authority is mutual.