# Exhibit 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

BRENDAN KELLY,
    Plaintiff,

vs.

LIBERTY INSURANCE CORPORATION d/b/a
LIBERTY MUTUAL,
    Defendant.

Civil Action No. 1:15-cv-234-JL

## AFFIDAVIT OF KENT JONES

I, Kent Jones, hereby affirm under penalty of perjury as follows:

1. I have actual personal knowledge of the facts sets forth below;

2. I began working at Plum Creek Timber Company in May of 1999 in the role of Resource Accounting Manager;

3. On August 15, 2001, I assumed the role of Director of Accounting – Shared Services, Manufacturing and Risk Management;

4. In February of 2016, Weyerhaeuser Company acquired Plum Creek;

5. I am currently employed by Weyerhaeuser as Director of Accounting – Shared Services, Manufacturing and Risk Management for Plum Creek Timber, a subsidiary of Weyerhaeuser;

6. In my role as Director of Accounting – Shared Services, Manufacturing and Risk Management for Plum Creek, I was responsible for deciding whether to accept or reject underinsured/uninsured motorist coverage on behalf of Plum Creek;

1

7. I was authorized to do this by my supervisor, the Chief Accounting Officer of Plum Creek;

8. Consistent with Plum Creek's past practice and my professional judgment, beginning in 2002, I rejected underinsured/uninsured motorist coverage on behalf of Plum Creek on an annual basis in each state in which such rejection was permitted;

9. Thereafter, I delegated the responsibility of executing uninsured/underinsured motorist selection/rejection forms to an employee whom I supervised, Lisa Duetsch;

10. In authorizing Ms. Duetsch to execute these forms, I furnished Ms. Duetsch with a written Delegation of Authority, which was updated on a regular basis;

11. The written Delegation of Authority I provided to her prior to May 2013 is attached hereto as Exhibit A;

12. The manner in which I maintain the electronic copies of this document includes a date field that automatically updates each time the document is opened;

13. Accordingly, although the date on Exhibit A is September 20, 2016, I can affirm based on the electronic document title that this is the document that I furnished to Ms. Deutsch prior to May 2013;

14. I have maintained in my electronic files copies of similar Delegations of Authority for the years 2004, 2005, 2007, 2010, 2011, 2012, 2013, 2014 and 2015;

15. When I assigned Ms. Duetsch the responsibility of executing underinsured/uninsured motorist coverage selection/rejection forms on behalf of Plum Creek, I instructed her to execute these forms so as to reject such coverage where permitted by law;

16. I was aware that Ms. Duetsch executed underinsured/uninsured motorist coverage selection/rejection forms on behalf of Plum Creek in each of the years in which she was

authorized to do so, including in the year 2013, and I was aware that she executed these forms so as to reject coverage;

17. If Ms. Duetsch had not executed these forms so as to reject coverage, this would have been a direct deviation from my instructions and would have reflected poorly on her performance as Risk Manager.

Signed and sworn under the pains and penalties of perjury on ___22nd___ (date) at ___Columbia Falls, MT___ (City, State).

_Kent M. Jones_
Kent Jones

SWORN TO AND SUBSCRIBED

before me this __22nd__ day of _Sept._, 2016.

_Kathy Shaver_
Notary Public

KATHY SHAVER
NOTARY PUBLIC for the
State of Montana
Residing at Kalispell, Montana
My Commission Expires
July 07, 2019

59532082v.1

3

# Exhibit A

# *memorandum*



September 20, 2016

TO: Donna Bolender, Renee Erickson, Minta Johnson, Lisa Duetsch, Rick Clark

FROM: Kent Jones, Director of Accounting / Shared Services

SUBJECT: Delegation of Authority – updated July 2013

The following delegation of authority is provided to Accounting Unit 034800:

1) Credit related activities
   a) Extension of credit to customers
      i) *Senior Manager (DB)* may approve credit lines up to $500,000
      ii) *Analyst, Financial Services (JP)* may approve credit lines up to $100,000
      i) *Shared Services Accountant (AO)* may approve credit lines up to $50,000
   b) Write-offs of uncollectible accounts
      i) *Senior Manager* may approve account write-offs up to $25,000
         (1) Account write-offs greater than $25,000 will be based on discussions with the respective product line sales manager / resource manager, general manager, and/or operations vice president.
         (2) The legal department will also be involved as appropriate.
      ii) *Analyst, Financial Services (JP) )* may approve account write-offs up to $1,000
      iii) No approval is required for account tolerance write-offs *(e.g., < $30.00)*
   c) All confidentiality agreement to be signed by the Senior Manager (DB), Director or an Officer (e.g., VP – Tom Ray) of the Company.

*All Department Managers* (as applicable to their area of responsibility – e.g. Payroll vs. Property taxes vs. Risk Management, etc.)

2) Payment required under applicable law – **up to $500K**
   a) Director will approve payments >$500K, up to $1M
      i) Exception – bimonthly payroll tax payments – up to $750K (as tax payments can commonly be in the $500-600K range)
   b) Any payments **greater than $1M** need to be approved via VP/Chief Accounting Officer.
      i) Approval can be via e-mail
   c) Examples
      i) Federal, state, and local payroll related disbursements (e.g., tax payments, etc.).
      ii) Garnishments (AP; payroll; etc.)

3) All department level budgeted / normal costs (e.g., operating expenses; supplies; services; training classes; CPE; expense reports; etc.)
    a) Examples – Envelopes; check stock; printer cartridges; shredding services; subscriptions and memberships (e.g., APA, LUG, Balance Consulting; etc.)
    b) All training courses (travel based, internet, etc. ) will be reviewed with director prior to booking / purchasing.
    c) Other
        i) Columbia Falls "Petty Cash" account
            (1) Finance Manager (DB) <u>cannot</u> approve payment of this account.
                (a) Either Manager – Risk, Sr. Manager or Director to approve
        ii) Payments on AFE's originated or managed by the accounting unit / applicable manager.
        iii) Expense reports
            (1) If originated by a Manager, a Sr. Manager or Director to approve
        iv) Purchase Cards
            (1) Employees issued a purchase card for department and /or company expenses (e.g., rent for records retention; one time vendor payment; etc.) are authorized up to the current limit on the card.

*Senior Manager (DB) – AP*

4) AP & Tax (property)
    *a)* Purchase Card Invoices (s) / Drafts
    *b)* Manufacturing / CFO Property Taxes

*Manager – Risk*

5) Risk Management Activities
    a) Payment of all insurance costs associated with annual or other policy renewals, as approved by the CFO and/or COA.
    b) Payment of all periodic insurance and risk management related costs, such as workers' compensation self-insurance fees in Washington and Montana, up to $50,000
    c) Payment of all incidentals insurance costs up to $50,000.
        i) Examples include policy audits and retro-premiums, Payment of product line associated costs, including bonds, vehicle accident settlements, etc.
            (1) These costs are cleared / relayed to the respective business units.
    d) Establishing or modifying contractual insurance limits for vendor contracts or other third party activities
    e) Signing of contracts, agreements, statements, etc

      i) Director – Insurance contracts; Insurance amendments; Annual Brokerage Agreements; etc.
      ii) Risk Manager - Auto UI/UnderI forms; insurance inquiries & statements; TRIA forms; etc.
      iii) The Legal department will be consulted as appropriate (i.e. Contracts >$1M in costs, higher risk contracts such as D&O, new contract forms, etc.)

6) Auto Fleet Activities
   a) Signing of manufacturer annual incentive agreements (e.g., CAPs), POA's to licensee vehicles, and other like "administrative" items.
   b) Lease Plan Invoice(s) and related leasing items for established vehicle agreement(s)

*Manager-Workers Compensation*

7) Workers Compensation Activities
   a) Payment of Monthly invoice from third party administrator (TPA) – up to $200,000
      i) Invoices may include third party re-imbursement for claim payments, administration fees, settlement re-imbursement, and like costs.
   b) Payment of periodic (e.g., quarterly or annual) self insurance and like fees assessed by States or Self Insurance Agencies/ Guarantee funds and like entities – up to $50,000 (referenced / identical to 5b above)
   c) Payment of legal defense bills specific to work comp but not specific to a claim – up to $1,000
      i) All other costs to be approved / reviewed by legal (e.g., Rosemary Daszkiewicz)

For those areas where fully crossed training (RM and WC) has occurred and work is shared (e.g., bonds), authority is mutual.