UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

**********************************
Brendan Kelly,                    *
  Plaintiff                       *
                             *
v.                                *      Civil Action No: 1:15-cv-234-JL
                             *
Liberty Insurance Corporation     *
d/b/a Liberty Mutual,             *
  Defendant                       *
**********************************

## PLAINTIFF BRENDAN KELLY'S REPLY TO LIBERTY'S SUPPLEMENTARY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### I.  Introduction

Pursuant to the Court's order of December 5, 2016, this memorandum of law is filed to supplement the plaintiff's Objection to Liberty's Motion for Summary Judgment and the plaintiff's Cross Motion for Summary Judgment.

Because Liberty in its Motion for Summary Judgment relies on a claimed rejection form as the basis for summary judgment without establishing that the form was properly authorized by Plum Creek, the Court allowed limited discovery and supplementary pleadings to address the narrow issue of whether a particular individual, to-wit, Lisa Duetsch, had the authority to execute a form rejecting uninsured motorist coverage on behalf of the plaintiff's employer, Plum Creek Timber Company, Inc.

As set forth below, a genuine issue of material fact remains about whether the rejection form was a properly authorized act of Plum Creek Timber Company, Inc., and Liberty is not entitled to summary judgment.

Although the narrow fact question of whether Plum Creek authorized rejection of UM coverage for its vehicles in New Hampshire remains in dispute and precludes summary judgment for Liberty, this detour should not distract from the primary issue in this case: Liberty's affirmative obligation to produce a policy that unambiguously disclosed what coverage it did and did not provide. Liberty is not entitled to summary judgment as a matter of law even if the fact question of Lisa Duetsch's authority to reject UM coverage for Plum Creek were resolved in Liberty's favor. Liberty cannot and does not dispute that its policy did not include, mention, or reference the rejection of statutory UM coverage. Consequently, Liberty has failed to provide an insurance policy that clearly and unambiguously told insureds that UM coverage had been rejected and that, as a result, the UM coverage guaranteed by N.H. R.S.A. 264:15 did not apply to them. Instead, Liberty's policy represented the opposite. It promised that the policy contained all of the parties' agreements about the terms and coverage provided, so that an insured reading the policy would believe that there had not been any rejection in writing as required by R.S.A. 264:15. A reasonable insured reading the policy in its entirety would believe that the UM coverage mandated by New Hampshire law applied to him. (See Plaintiff's Memorandum of Law in Support of Objection to Liberty's Motion for Summary Judgment, pp. 8-13; see also Plaintiff's Memorandum of Law in Support of Plaintiff's Cross-Motion for Summary Judgment, pp. 10-14.)

Thus, even if the Court finds that Plum Creek as the corporate principal did intend to reject UM coverage as permitted by the statute, and even if Lisa Duetsch had the authority to execute a rejection form as Plum Creek's agent, it is undisputed that Liberty withheld that rejection from the policy's insureds. Liberty's policy left its insureds to believe reasonably that they were protected by the statutory UM coverage required in the absence of a rejection. Allowing Liberty to so deceive its insureds is not consistent with the legislature's intent in

2

enacting R.S.A. 264:15, or with the long-held requirement that insureds must produce insurance policies that clearly tell insureds what coverage is and is not provided.

## II.  Factual Background and Duetsch's Role

Liberty's claim for summary judgment rests on a claimed UM selection/rejection form that is not attached to or referenced in the Liberty liability/umbrella policy at issue. Liberty has represented that the form was in its underwriting file.[1] The form, once found, did not identify any particular insurance policy or policy number. It is signed only with an illegible scrawl, and does not identify the name, title or position of the individual signing the form.

With its initial motion for summary judgment, Liberty provided an affidavit from Lisa Duetsch stating that she signed the rejection form in her capacity as "Manager, Risk & Insurance" for Plum Creek. Originally, Liberty did not allege and did not produce any evidence that Lisa Duetsch had the authority to decide to reject UM coverage on behalf of Plum Creek or that her signing the form was an authorized act of the corporate principal.

The plaintiff raised this disputed issue of fact in its objection. (See Plaintiff's Objection to Liberty's Motion for Summary Judgment dated June 20, 2016.) After a hearing, the Court allowed the plaintiff limited discovery on this issue,[2] and permitted Liberty to supplement its record. The Court also directed the parties to agree on a schedule for those events.[3] The Court

---

[1] As set out in full with evidentiary proof in Plaintiff's Memorandum of Law in Support of Objection to Liberty's Motion for Summary Judgment, it took Liberty's own claims adjustor some five (5) weeks of working with Liberty's internal underwriters to determine whether Liberty had obtained a UM rejection form. (See Plaintiff's Memorandum of Law in Support of Objection to Liberty's Motion for Summary Judgment, p. 5.)

[2] Contrary to the suggestion in paragraph 2 of Liberty's supplementary memorandum, the plaintiff does not now claim that he was deprived of any right to discovery on this issue.

[3] In the telephonic hearing on November 28, 2016 in which the parties discussed the schedule under which Liberty would be permitted to supplement its record, the Court cited the agency standard set out in *Bouffard v. State Farm Fire & Cas. Co.*, 162 N.H. 305 (2011). The Court further suggested that, in its view, under *Bouffard* it would not be enough for Liberty to simply produce evidence that Duetsch's supervisor authorized her to sign the form, or even that the supervisor's supervisor authorized him. The Court correctly suggested Liberty would need to show that the authority came from the corporate principal. The Court thus suggested to the parties exactly the proof the Court expected so as to resolve the agency question.

approved the parties' stipulation by order dated December 5, 2016.

### III.  Argument

**A.**   **Liberty has failed to establish that the UM rejection form relied on by Liberty was a validly authorized act of Plum Creek, and the existence of this genuine issue of material fact precludes summary judgment for Liberty.**

Liberty is not entitled to summary judgment unless it establishes that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(a). Liberty's Motion for Summary Judgment turns on the validity of the UM rejection form, which is a question of fact disputed by the plaintiff. The plaintiff's Cross-Motion for Summary Judgment presents only legal issues, and is not dependent on the resolution of any fact questions. As the insurer seeking to avoid coverage, Liberty bears the burden of proving that it has no coverage obligation. N.H. R.S.A. 491:22-a.

In support of its claim that the named insured Plum Creek rejected UM coverage, Liberty produced from its underwriting file an unidentified UM rejection form signed by Lisa Duetsch that was not attached to, incorporated by reference in, or otherwise referred to in Liberty's umbrella policy. The parties do not dispute that Lisa Duetsch was employed by Plum Creek when she signed the UM rejection form. The material fact issue in dispute is whether Duetsch was validly authorized by the corporation to execute the form and reject UM coverage, such that the form reflects an authorized act of the named insured under the policy, Plum Creek Timber Co., Inc.

As the insurer relying on the rejection form and claiming that the rejection form represents Plum Creek's act, it is Liberty's burden to prove the agency relationship. *See Bouffard*, 162 N.H. at 313. Liberty has had more than seven months since plaintiff pointed out this issue of material fact and the gap in Liberty's proof. (See Plaintiff's Objection to Liberty's

Motion for Summary Judgment dated June 20, 2016, ¶¶5-6.) Liberty has failed to produce evidence that satisfies the agency requirements under New Hampshire law. As more fully set out below, genuine issue of material fact remains as to whether Plum Creek, as corporate principal, authorized a rejection of UM coverage on its fleet vehicles in New Hampshire. Liberty has failed to meet its burden of proof on agency, has failed to satisfy its burden under Rule 56, and is not entitled to summary judgment.

### 1. Agency rules and application to corporations

Whether an individual was authorized to act as agent for a corporate principal is a question of fact. "An agency relationship does not turn solely upon the parties' <u>belief</u> that they have or have not created one." *VanDeMark v. McDonald's Corp*., 153 N.H. 753, 660-61 (2006) (Emphasis added).  New Hampshire law specifically defines the elements necessary to prove that an individual acted as another party's agent, to-wit: (1) authorization from the principal that the agent shall act for him or her; (2) the agent's consent to act; and (3) the understanding that the principal is to exert some control over the agent's actions. *Bouffard v. State Farm Fire & Cas. Co.*, 162 N.H. 305, 311 (2011); *VanDeMark*, 153 at 660. The party claiming the existence of the agency relationship bears the burden of proving the existence of each of these three elements. *Bouffard*, 162 N.H. at 311.

The same principal-agent rules apply when the principal is a corporation. "A corporation is jural person, not a person in fact. It is an artificial creature, acting only through agents." *Cutter v. Maine Bonding & Cas. Co.,* 133 N.H. 569, 573 (1990). A corporation defines its operating rules through its by-laws, and the bylaws define who within a corporation is empowered to do what acts on behalf of the corporation.18A Am. Jur. 2d Corporations § 252. Generally, a corporation's Board of Directors is responsible for running the corporation, and the Board

appoints executive officers to manage corporate operations. Corporate directors and executive officers typically act as the corporate principal for agency purposes. In the corporate context, the mere fact that an individual is a corporate employee obviously does not mean that all of his or her actions are authorized by the corporation. *See, e.g.*, *M & D Cycles, Inc. v. Am. Honda Motor Co.*, 208 F. Supp. 2d 115 (D.N.H. 2002), *aff'd*, 70 F. App'x 592 (1st Cir. 2003); *Rodowicz v. Massachusetts Mut. Life Ins. Co.*, 192 F.3d 162, 177 (1st Cir. 1999).

In order to satisfy the agency test in *Bouffard*, Liberty must prove that Duetsch was authorized to reject UM coverage by the corporate principal, that is, a corporate director or executive officer of Plum Creek with authority to act, either directly or indirectly through a chain of assigned authorization. Here, Liberty has not done so.

### 2.    The Agency Test as Applied

Liberty has produced two affidavits from Lisa Duetsch saying that she was authorized to complete the UM forms by her supervisor, Kent Jones, the "Director of Accounting - Shared Services, Manufacturing and Risk Management" for Plum Creek.

Liberty has also produced two different affidavits from Kent Jones. According to his affidavits, Jones <u>believed</u> that he had the authority to accept or reject UM coverage for Plum Creek's vehicles. He states that he was given that authority by his supervisor, David Brown, who was the Chief Accounting Officer of Plum Creek. Kent Jones' affidavit admits that David Brown was not a member of Plum Creek's Board of Directors.

As a further exhibit, Liberty has provided the signature page from Plum Creek's federal 10-K Annual Report form, on which David A. Brown was identified as "Vice President and Chief Accounting Officer (Principal Accounting Officer)" as of <u>February 28, 2014</u>. (See Liberty's Exhibit 3 to Supplementary Declaration of Lavinia M. Weizel, Esq.)  <u>The 10-K exhibit</u>

6

offered by Liberty does not establish what David A. Brown's role at Plum Creek was in May,

2013 when Lisa Duetsch signed the rejection form.  Notably, Liberty offers no direct evidence

on this point from David Brown himself.  Liberty has thus provided no evidence that any director

or executive officer of Plum Creek delegated, knew, or approved of the decision in May, 2013 to

deprive Plum Creek employees of otherwise mandated statutory UM coverage while driving

Plum Creek vehicles.

 Instead, Liberty has also offered "Delegation of Authority" memoranda authored by Kent

Jones, which were updated periodically by Kent Jones "as needed." According to Kent Jones'

affidavit, the memoranda were designed to set out the authority which he gave to employees

below him, including Lisa Duetsch. Examination of the memoranda reveals that they provide no

information in establishing whether a Plum Creek principal delegated authority to reject UM

coverage to Lisa Duetsch.

 First, nothing in any of the memoranda addresses who gave Kent Jones the authority he

was, in turn, delegating to other employees. The memoranda do not reveal who authorized Kent

Jones to make insurance coverage decisions. The memoranda do not set forth what the nature of

that claimed authority might have been. There is nothing in any of the memoranda that proves

Kent Jones' alleged authority to make UM coverage decisions for Plum Creek derived from a

director or officer of Plum Creek.

 Second, the memoranda do not evidence the express authority to reject UM coverage. For

example, the  Delegation of Authority memorandum "updated June 2012", relied upon by

Liberty, and which appears to be the memorandum in effect when Lisa Duetsch signed the

rejection form on May 30, 2013, assigns the following authority to the "Manager - Risk":

 5)  Risk Management Activities

    a)  Payment of all insurance costs associated with annual or other policy renewals, as approved by the CFO and/or COA.

    b)  Payment of all periodic insurance and risk management costs, such as worker's compensation self-insurance fees in Washington and Montana, up to $50,000

    c)  Payment of all incidentals [sic] insurance costs up to $50,000.

        i)  Examples include policy audits and retro-premiums, Payment of product line associated costs, including bonds, vehicle accident settlements, etc.

          (1) These costs are cleared / relayed to the respective business units.

    d)  Establishing or modifying contractual insurance limits for vendor contracts or other third party activities

    e)  <u>Signing</u> of contracts, agreements, statements, etc

        i)  Director - Insurance contracts, Insurance Amendments; Annual Brokerage Agreements; etc

        ii)  Risk Manager - <u>Auto UI/UnderI forms</u>; insurance inquiries & statements; TRIA forms, etc;

        iii) The Legal department will be consulted as appropriate (i.e. Contracts >$1M in costs, higher risk contracts such as D&O, new contract forms, etc.)

6)  Auto Fleet Activities

    a)  Signing of manufacturer annual incentive agreements (e.g., CAPs), POA's to licensee vehicles, and other like "administrative" items.

(Liberty's Exhibit A to Supplementary Affidavit of Kent Jones, pp 35-36, emphasis added.) No paragraph in this memorandum covers decision-making or executing forms to insure Plum Creek's vehicles. Section 5(d) does not apply here, because making decisions about Plum Creek's liability/umbrella coverage on its own vehicles did not involve "contractual insurance limits for vendor contracts or other third party activities.") Section 5(e) (ii) appears to give the Risk Manager authority to "sign" "Auto UI/UnderI forms," but does not state whether the authority was to sign to <u>select</u> UM coverage or sign to <u>reject</u> UM coverage.

      Thus, despite filing multiple affidavits and other documents, Liberty does not establish that Plum Creek as corporate principal actually authorized Kent Jones to make the decision about UM coverage or to reject such coverage for its fleet vehicles. Liberty's evidence shows only that Kent Jones and Lisa Duetsch <u>believed</u> that they had authority to reject UM coverage on behalf of

Plum Creek, but not that they actually had that authority. Liberty provides no direct, admissible evidence that a director or executive officer of Plum Creek, as principal of the corporation, authorized the rejection of UM coverage or delegated that authority to Kent Jones.  It is well settled that agency and authority cannot be proved by the hearsay statements of the alleged agent himself. *See, e.g., Brownell v. Tide Water Associated Oil Co.*, 121 F.2d 239, 244 (1st Cir. 1941). Kent Jones' affidavit stating that he was authorized by David Brown to decide about UM coverage is inadmissible hearsay, because Liberty offers Jones' affidavit for the truth of the matter asserted, to-wit, that David Brown did authorize him to reject UM coverage. See Fed. R. Evid. 801(c); 802. It is black-letter law that hearsay evidence cannot be considered on summary judgment. *Davila v. Corporacion De Puerto Rico Para La Difusion Publica*, 498 F.3d 9, 17 (1st Cir. 2007); see also Fed. R. Civ. Pro. 56(e).

Liberty has failed to produce evidence as to who the corporate principals of Plum Creek were in May, 2013 when Lisa Duetsch signed the purported UM waiver. However, Plum Creek's public official records filed at the SEC covering that period time reveal who was empowered to act for Plum Creek. Under Plum Creek's by-laws, in the first instance "the business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors which may exercise all such powers of the Corporation and do all such lawful acts and things as are not by statute or by the Certificate of Incorporation or by these By-Laws required to be exercised or done by the stockholders." (See Exhibit A, Plum Creek By-Laws, Article III, Section 4, emphasis added.)  The By-Laws further permit the Board of Directors to appoint officers. (Exhibit A, Article IV, Section 1.) The President, subject to the Board of Directors, was granted authority for general supervision of the business of the corporation and the power to see that all orders and resolutions of the Board of Directors were carried into effect. (Exhibit A, Article IV, Section 5.)

The President was charged with executing certain corporate documents, "except that <u>the other officers may sign and execute documents when so authorized by these By-Laws, the Board of Directors, or the President.</u>" (Exhibit A, Article IV, Section 5, emphasis added.)  The By-Laws also granted power to the "Vice President, or the Vice Presidents if there is more than one," to "perform such other duties" and "exercise such other powers as the Board of Directors may from time to time may prescribe." (Exhibit A, Article IV, Section 6.)

As a result, under Plum Creek's By-Laws, an officer or vice-president <u>might</u> have authority to make decisions about insurance, to reject UM coverage for Plum Creek vehicles, or to sign rejection forms on behalf of the corporation, <u>but only if such actions were "so authorized" by the by-laws, the Board of Directors, or the President of the corporation</u>. (Exhibit A, Article IV, Section 5.)  In order to establish that a rejection of UM coverage was an authorized act of the corporation, Liberty must show that the authority to make insurance coverage decisions was delegated by the Board of Directors to the President or to a Vice-president who, in turn, delegated that authority to Kent Jones.[4] Liberty has not provided that evidence, despite more than adequate opportunity to do so.

Hence, Liberty has not satisfied its burden of proving that the rejection form on which it relies was a validly authorized act of Plum Creek. Despite opportunity to do so, Liberty has offered no evidence that shows that Plum Creek, through its Board of Directors or executive officers, knew and approved of the decision to reject UM coverage.  Liberty has not satisfied the requirements to prove agency under *Bouffard*.  As a result, a genuine issue of material fact

---

[4] Liberty's submission of the signature page of Plum Creek's Annual Statement dated February 28, 2014 does not prove that David Brown was a vice-president of Plum Creek in May, 2013 when Lisa Duetsch claimed the authority to complete the UM selection/rejection form.  Even if it were established that he was a vice-president of Plum Creek at that time, however, there is no admissible evidence whatsoever that he was authorized to make decisions about Plum Creek's insurance or that he delegated that decision-making authority to Kent Jones.

remains and Liberty is not entitled to summary judgment.

### IV.  Conclusion

Liberty has failed to prove that the UM rejection form signed by Lisa Duetsch was an authorized act of the Plum Creek corporation. Because this genuine issue of material fact remains in dispute, Liberty is not entitled to summary judgment under Fed. R. Civ. Pro. 56.

<u>Even if Liberty were able to prove that the corporation authorized the rejection of UM coverage, Liberty is not entitled to summary judgment as a matter of law.</u> Liberty failed to disclose the fact of such rejection in its policy. Instead, it issued a policy that promised that it contained all of the parties' agreements and that there were no outside terms or agreements. (See Plaintiff's Memorandum of Law in Support of Objection to Liberty's Motion for Summary Judgment, pp. 4-5.) In the absence of notice that UM coverage had been rejected in writing pursuant to R.S.A. 264:15, a reasonable insured such as the plaintiff was entitled to believe that the statutory UM coverage applied to him.

### V.  Prayer for Relief

For all of the reasons set forth in the plaintiff's Objection to Liberty's Motion for Summary Judgment (Document #32), his accompanying memorandum of law (Document #33), and this supplementary memorandum, Liberty's Motion must be denied.   Moreover, for all of the reasons set forth in the plaintiff's Cross-Motion for Summary Judgment (Document #27) and his accompanying memorandum of law (Document #27-1), the plaintiff's Cross-Motion for Summary Judgment should be granted.

Wherefore, plaintiff Brendan Kelly respectfully requests that this Court:

A.    Schedule a hearing on these supplementary pleadings, and on the pending Motion for Summary Judgment and Cross-Motion for Summary Judgment;

B.      Deny Liberty's Motion for Summary Judgment;

C.      Grant plaintiff's Cross-Motion for Summary Judgment; and

D.      Grant such other and further relief as may be just.


Respectfully submitted,
Brendan Kelly
By his attorneys,
THE STEIN LAW FIRM, PLLC


January 20, 2017          /s/Robert A. Stein
NH Bar #2438
PO Box 2159
Concord NH 03302-2159
(603) 228-1109
rstein@steinlawpllc.com


/s/Diane Perin Hock
NH Bar #1999
PO Box 2159
Concord NH 03302-2159
(603) 228-1109
dianeperin@comcast.net