UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Brendan Kelly

    v.                                        Civil No. 15-cv-234-JL
                                                Opinion No. 2018 DNH 106

Liberty Insurance Corp.,
d/b/a Liberty Mutual

## ORDER ON SUMMARY JUDGMENT

This insurance coverage case requires the court to determine whether a named insured validly rejected uninsured motorist coverage. The dispute arises from a motor vehicle accident in which plaintiff Brendan Kelly was seriously injured. Kelly, an employee of Plum Creek Timber Co., was driving a company truck when an oncoming vehicle crossed a double-yellow line and collided head-on with Kelly. After collecting the liability insurance policy limit from the other driver's insurance carrier, Kelly sought underinsured motorist (UM) coverage under an umbrella policy defendant Liberty Mutual issued to Plum Creek. New Hampshire law requires that umbrella policies include UM coverage unless rejected by the named insured. See N.H. Rev. Stat. Ann. § 264:15. Liberty Mutual denied the claim on the basis that Plum Creek had expressly rejected UM coverage. Claiming that Plum Creek's rejection is invalid under New Hampshire law, Kelly filed a petition for declaratory judgment seeking coverage under the Liberty Mutual

policy.  See [N.H. Rev. Stat. Ann. 491:22](). This court's subject matter jurisdiction is premised on diversity of citizenship. [28 U.S.C. § 1332]().

The parties filed cross-motions for summary judgment.  Two issues were central to the dispute: 1) whether Liberty Mutual was required to physically attach a statutorily-required rejection notice[1] to Plum Creek's policy or notify Plum Creek employees of the rejection; and 2) whether a particular Plum Creek employee had the requisite authority to reject UM coverage.  After reviewing the parties' motions, memoranda and exhibits and hearing argument, the court denied plaintiff's motion and granted defendant's motion, thereby rejecting plaintiff's claim regarding attachment of the rejection notice.[2] The court also ruled that material factual disputes remained as to the Plum Creek employee's authority, and that issue proceeded to a bench trial.  This order -- issued the same day as the court's bench trial rulings -- explains the court's reasoning as to its earlier partial grant of summary judgment.  The court

---

[1] [N.H. Rev. Stat. Ann. § 264:15]().

[2] See Endorsed Order, March 28, 2017.

2

issues findings of fact and rulings of law from the bench trial in a separate order.

I.  **Summary judgment**

Summary judgment is properly granted when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(a).  The court "views all facts and draws all reasonable inferences in the light most favorable to the non-moving" parties.  Estrada v. Rhode Island, 594 F.3d 56, 62 (1st Cir. 2010).  On cross-motions for summary judgment, "the court must consider each motion separately, drawing inferences against each movant in turn."  Merchants Ins. Co. of N.H., Inc. v. U.S. Fid. & Guar. Co., 143 F.3d 5, 7 (1st Cir. 1998) (quotation marks omitted).  Here, the parties' arguments mirror each other.  For example, Kelly claims he is entitled to summary judgment because New Hampshire law requires an insurer to attach the UM rejection form to the policy in order to be valid, while Liberty's summary judgment motion argues that Plum Creek's rejection is valid and conclusive.  Thus, while the court treats the motions separately, it analyzes the arguments in the same intertwined manner in which they are presented to the court.

## II. **Background**

The basic facts are not in dispute. On December 10, 2013, a car driven by George Motard crossed into Kelly's lane of travel and struck the truck Kelly was driving head-on. Motard was killed in the accident; Kelly was seriously injured. Kelly claims permanent injury and medical bills to date in excess of $450,000. At the time of the accident, Kelly was acting in the course of his employment for Plum Creek, which owned the truck he was driving. Progressive Casualty Insurance provided coverage for decedent Motard under a liability policy with a $100,000 limit. Plum Creek's primary automobile insurance carrier was ACE American Insurance Co, with liability and underinsured motorist coverage limits of $1 million. Both Progressive and ACE tendered their respective policy limits to Kelly, who claims that his damages exceed the tendered amount.[3]

During the relevant time period, Liberty insured Plum Creek under a commercial umbrella policy with a $5 million limit. Kelly sought benefits under the Liberty policy, but Liberty

---

[3] Kelly received $100,000 from Progressive and $900,000 from ACE, which permissibly set off the Progressive coverage from its limit. See, e.g., Deyette v. Liberty Mut. Ins. Co., 142 N.H. 560, 563 (1997) ("Recovery by an insured from an underinsured motorist tortfeasor triggers an insurer's right to reduce payment under underinsured motorist coverage . . . ").

4

denied the claim, explaining that Plum Creek had expressly rejected UM coverage under the umbrella policy. This suit followed.

III. **Analysis**

The parties agree that New Hampshire law controls this dispute. Therefore, the insurer, Liberty, bears the burden of proving that Kelly's claim is not covered. N.H. Rev. Stat Ann. § 491:22-a (2010); Carter v. Concord. Gen. Mut. Ins. Co., 155 N.H. 515, 517 (2011).[4]

A. Authority to reject UM coverage

New Hampshire law requires that umbrella policies

> "provide [UM] coverage equal to the limits of liability purchased, <u>unless the named insured rejects such coverage in writing</u>. Rejection of such coverage by a named insured shall constitute a rejection of coverage by all insureds . . . and shall remain effective upon policy amendment or renewal, unless the named insured requests such coverage in writing."

---

[4] The parties also disagree as to whether the umbrella policy, as written, provides UM coverage. Because New Hampshire law <u>requires</u> umbrella policies to include UM coverage (unless rejected), this argument is largely academic. Given the statutory mandate of UM coverage and the fact that the statute also allows the named insured to reject such coverage for all insureds, the court declines to resolve this issue, as it will not advance the case of this matter. The outcome turns solely on whether Plum Creek validly rejected the UM coverage mandated by § 264:15.

5

N.H. Rev. Stat. Ann. § 264:15 (emphasis added).  The parties agree that Plum Creek is the "named insured," and that Kelly is "an insured" by virtue of the fact that he was operating the truck in the course of his employment at the time of the accident.

Liberty argues that Plum Creek rejected UM coverage.  It supports this claim with a copy of a rejection form signed by Lisa Duetsch, Plum Creek's Manager of Risk and Insurance.[5]  In response, plaintiff argues that the record lacks any evidence that Duetsch was authorized by Plum Creek to reject the coverage.  As previously noted, on March 28, 2017, the court orally denied summary judgment on that issue, and the parties proceeded to a bench trial on the question of Duetsch's authority.

B.  Notification of UM rejection

In addition to the authority issue, plaintiff argues that Plum Creek's UM rejection is invalid -- even if Duetsch had proper authority -- because the rejection form was not attached to the policy, thus depriving Kelly, an insured, of written

---

[5] Weitzel Decl., Exhibits C and D (Doc. Nos. 30-3, 30-4).

notice of his employer' coverage rejection.  This argument is premised on both the language of the statute and the language of the policy.  As explained below, however, plaintiff's argument finds no support in the language of § 264:15, the policy, or cases from New Hampshire and elsewhere.  The court turns first to the statute.

    1.   N.H. Rev. Stat. Ann. § 264:15

Under New Hampshire law, the interpretation of a statute is a question of law.  Carlisle v. Frisbie Mem. Hosp., 152 N.H. 762, 773 (2005).  The court "first examines the language of the statute, and, where possible, ascribes the plain and ordinary meaning to the words used."  Id.  If the statute's language "is plain and unambiguous, [the court] does not look beyond it for further indication of legislative intent and [does] not consider what the legislature might have said or add language that the legislature did not see fit to include."  Id.  Applying these principles, the court finds that New Hampshire law does not require the notice that Kelly demands.

First, the plaintiff does not dispute that the statute lacks a requirement that the rejection form be attached to the policy.  Thus, an attachment requirement would impermissibly "redraft [the] statute" to include a requirement "not fairly

expressed." Ellis v. Royal Ins. Cos., 129 N.H. 326, 334 (1987) (internal quotations omitted); see also Gisonni v. State Farm Mut. Ins. Co., 141 N.H. 518, 520 (1996) (rejecting claim that statutorily-required insurance coverage for accidents in Canada also extend to Mexico because to do so would "add words which the lawmakers did not see fit to include."). This alone substantially undermines plaintiff's argument that New Hampshire law requires an insurer to attach the UM rejection form to the policy.

While not binding, the court also finds persuasive that courts in other jurisdictions with similar statutes have held that a UM rejection form need not be attached to a policy to be valid. See, e.g., Mitchell v. Liberty Mut. Ins. Co., 24 P.3d 711, 722-23 (Kan. 2001) ("Once a valid rejection is written, the statute has been complied with."); Ortiz v. State Farm. Mut. Ins. Co., 955 S.W.2d 353, 357 (Tex. Ct. App. 1997) (rejecting insured's request to "interpret the written rejection language in [the relevant state statutes] as requiring that the writing be attached to or in some other way incorporated in the policy."); Koenig v. Mission Ins. Co., 471 P.2d 271, 273 (Ariz. 1970) (holding that insured's written waiver of uninsured motorist coverage in her application for automobile liability

8

coverage was sufficient to reject uninsured motorist coverage). By way of contrast, it is noteworthy that New Mexico insurance regulations expressly require that a UM rejection form be incorporated and made part of the insurance policy. Jordan v. Allstate Ins. Co., 245 P.3d 1214, 1220 (N.M. 2010). No similar provision in New Hampshire's statute or its insurance regulations provides for such a requirement.

Plaintiff cites no legal authority -- statutory, regulatory, judicial or scholarly -- for his position. Instead, he argues that the failure to attach the UM rejection form to the policy or otherwise notify him of the coverage rejection defeats the legislative "intent" of § 264:15 to "promote a public policy of placing insured persons in the same position that they would have been if the offending uninsured motorist has possessed comparable liability insurance by broadening protection for those insured in accidents involving uninsured motorists."[6] The New Hampshire Supreme Court commands, however, that "[u]nless [the court] find[s] that the statutory language is ambiguous, [the court] need not look to legislative intent." In re Union Tel. Co., 160 N.H. 309, 317 (2010). Here, the

---

[6] Pltf. Mem., doc. no. 27-1, at 6-7 (quoting Rivera v. Liberty Mut. Fire Ins. Co., 163 N.H. 603, 608 (2012)).

statute unambiguously requires only "written rejection" by the named insured to validly reject an umbrella policy's UM coverage on behalf of "all insureds." The statute requires no more.

Relatedly, plaintiff argues that Liberty's failure to attach the rejection form to Plum Creek's policy harms him because "he would have no way to know whether the automatic UM coverage of RSA 264:15 applies to him."[7] This argument does little to advance plaintiff's case. On one hand, he asks the court to assume that he is familiar enough with New Hampshire insurance law to understand that, pursuant to statute, UM coverage is "automatic" (unless rejected) in his employer's umbrella policy. On the other, he asks to freely ignore the portion of the same statute that permits his employer to reject that coverage and that such a rejection would apply to him.

In addition, plaintiff's theory would require that an insurer in Liberty's position notify all of its named insureds' employees that their employer has rejected UM coverage.[8] Yet plaintiff cites no authority for the proposition that this

---

[7] Pltf. Mem., doc. no. 33, at 11.

[8] Plum Creek alone has 1300 employees in 19 states and presumably adds and subtracts employees on a regular basis. Def. Mem., doc. no. 34-1, at 17.

burden has been assigned to insurers. More importantly, it is countered by the language in the statute, which unambiguously allows the named insured (Plum Creek) to reject UM coverage for all insureds (including plaintiff). Another factor weighing against plaintiff's theory is that a UM rejection under § 264:15 remains in effect in policy renewals -- without a new rejection form -- until the named insured later requests such coverage in writing. N.H. Rev. Stat. Ann. § 264:15, I. Thus, plaintiff's theory would require the insurer to notify not just present employees of their employer's rejection of UM coverage, but those hired after the inception of the policy. Once again, the plaintiff presents no authority to suggest that the New Hampshire legislature passed this responsibility to insurers.

Finally, the plaintiff asserts that Liberty tacitly agreed to attach any signed rejection forms when it submitted the blank form (as well as its entire commercial umbrella policy form) to the New Hampshire Insurance Department for approval.[9] See N.H. Rev. Stat. Ann. § 412:5. But the record evidence (submitted by the plaintiff himself) undermines this claim. In an affidavit attached to plaintiff's memorandum of law, the plaintiff's

---

[9] Pltf. Mem., doc. no. 33, at 17-18.

expert witness, Atty. Melinda Gehris, stated that "It is not the Insurance Department's role to determine how a form should be used or what any specific form means in a particular set of factual circumstances."[10] Atty. Gehris further stated that "[a]pproval of the language of the form in isolation does not constitute any approval of how Liberty intended to use the form, or how it did use the form in this case . . . ."[11] Although Kelly submitted the expert affidavit for the purpose of countering what he describes as Liberty's claim that the Insurance Department's approval of the form indicated its approval of Liberty's decision not to attach it to policies, the court concludes from the affidavit that the Insurance Department's approval of forms advances the arguments of neither side in this case.

2. Policy language

Kelly next argues that language in the umbrella policy required Liberty to add a policy endorsement reflecting Plum Creek's UM rejection. This argument is based on a clause in Liberty's policy, in a section titled, "Changes," which states

---

[10] Gehris Aff., doc. no. 33-9 at ¶ 6.

[11] Id. at ¶ 7.

that the "policy contains all of the agreements between you and [Liberty] concerning the insurance afforded. This policy's terms can be amended or waived only by endorsement issued by [Liberty] and made part of this policy."[12] Rejection of UM coverage, Kelly argues, is such an amendment or waiver.

The interpretation of insurance policy language is a question of law for the court to determine. [Rivera v. Liberty Mut. Fire Ins. Co., 163 N.H. 603, 606 (2012)](). "Policy terms are construed objectively; where the terms are clear and unambiguous, [the court] accord[s] the language its natural and ordinary meaning." [Barking Dog, Ltd. v. Citizens Ins. Co. Of Am., 164 N.H. 80, 83 (2012)](). Where disputed terms are not defined in the policy, the court construes them "in context, and in the light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured." [Great Am. Dining v. Philadelphia Indem. Ins. Co., 164 NH 612, 625 (2013)](). If policy terms are clear and unambiguous, the "search for the parties' intent is limited to the words of the policy." [White v. Vt. Mut. Ins. Co., 167 N.H. 153, 157 (2014)](). "Ambiguity exists if reasonable disagreement between contracting parties

---

[12] Coverage Form, doc. no. [33-3](), at 65.

13

leads to at least two interpretations of the language." Id. (quoting Colony Ins. Co. v. Dover Indoor Climbing Gym, 158 N.H. 628, 630 (2009)). "If one of the reasonable meanings of the language favors the policyholder, the ambiguity will be construed against the insurer." Colony, 158 N.H. at 630. However, the court will not "perform amazing feats of linguistic gymnastics to find a purported ambiguity[,]" id. at 630-31, and will "enforce a policy provision that limits the insurance company's liability when the policy language is clear and unambiguous." Merch. Mut. Ins. Co. v. Laighton Homes, Inc., 153 N.H. 485, 487 (2006).

Kelly's argument fails to persuade the court for several reasons. Initially, plaintiff argues that "[n]othing in the policy discloses that RSA 264:15's automatic coverage was rejected."[13] This is less a policy language-based argument than a variation of plaintiff's argument that the statute requires the UM rejection form to be attached to the policy, an argument the court already rejected. By its plain terms, § 264:15 makes UM coverage mandatory unless rejected by the named insured; it

---

[13] Pltf. Mem., doc. no. 27-1, at 13.

does not make it mandatory unless rejected by the named insured and with notice to all insureds.

Next, the court finds that the policy provision upon which Kelly relies does not require attachment of the UM rejection form to the policy. While the New Hampshire Supreme Court has not spoken directly to this issue, the court is persuaded by a decision from the Seventh Circuit Court of Appeals involving an employee seeking UM coverage from his employer's insurer. Applying an Indiana statute similar to New Hampshire's and similar policy language to Liberty's, the Court in Emp'rs Ins. of Wausau v. Stopher, 155 F.3d 892, 897-98 (7th Cir. 1998), held that a rejection of UM coverage was effective upon the named insured's execution of the rejection document. Thus, the court concluded, an endorsement was not necessary to effect the rejection, despite the policy provision that "terms can be amended or waived only by endorsement." Id. at 895.

As here, the party seeking UM coverage in Stopher claimed that rejection of UM coverage constituted a change that was not effective without an endorsement. Id. at 897. The court disagreed, stating: "Unlike a change in the Policy, both parties need not agree to [the named insured's] cancellation of part of its coverage . . . [which] does not require any act by

15

the insurer."  Id. at 898.  In so ruling, the court agreed with the insurer that "requiring [the insurer] to issue change endorsements was intended to prevent the insurer from unilaterally changing the Policy without providing prior notice to [the named insured]."  Id. at 897; cf. Ins. Comm'r v. People's Fire Ins. Co., 68 N.H. 51 (1894) (holding that insured can cancel policy without advance notice to insurer), cited in Kobilsek v. Hartford Acc. & Indem. Co., 95 N.H. 324, 327 (1949).  The Seventh Circuit Court of Appeals concluded:  "An insurer cannot bind an insured to coverage it does not want.  Nor is an insured entitled to the benefit of coverage that it clearly intended to reject."  Id. at 898.  The court finds Stopher's reasoning applicable here -- especially where plaintiff has provided no contrary authority -- and finds that Plum Creek intentionally rejected UM coverage, its rejection was effective upon submission to Liberty Mutual, and that no endorsement was necessary to effectuate the rejection.

**IV. Conclusion**

The court finds that Plum Creek's rejection of UM coverage in  the umbrella policy issued by Liberty was valid to the extent that neither New Hampshire law nor the insurance policy language require the rejection form to be attached to the policy

or for an insured in plaintiff's position to be given notice of the rejection. Accordingly, plaintiff's[14] motion for summary judgment is DENIED, and defendant's motion for summary judgment[15] is GRANTED, in part.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: May 18, 2018

cc: Robert A. Stein, Esq.
    Diane P. Hock, Esq.
    Nancy D. Adams, Esq.
    Lavinia M. Weizel, Esq.
    John B. Schulte, Esq.

---

[14] Doc. no. 27.

[15] Doc. no. 28.

17